DONALD L. CORBIN, Justice. | íAppellant, Terrick Terrell Nooner, moves this court to recall the mandate that this court issued on direct appeal affirming his conviction for capital murder and his sentence of death by lethal injection. Nooner v. State, 822 Ark. 87, 907 S.W.2d 677 (1995), cert. denied, 517 U.S. 1148, 116 S.Ct. 1436, 134 L.Ed.2d 558 (1996). Noon-er asks this court to vacate his death sentence and remand for resentencing on the ground that this court failed to sua sponte discover on direct appeal two fundamental errors that occurred at trial on matters essential to the consideration of the death penalty, thereby amounting to a defect or breakdown in the appellate process. Nooner contends that both the Eighth Amendment to the United States Constitution and this court’s precedent independently require recall of the mandate with respect to the jury’s special verdict on mitigating evidence. In addition, Nooner contends that the interests of justice favor recalling his mandate. Because this case involves a sentence of death, jurisdiction is properly in this court pursuant to Arkansas Supreme Court Rule l-2(a)(2) (2013). We conclude that |2Nooner fails to demonstrate extraordinary circumstances to justify recall of the direct-appeal mandate; therefore, we deny his motion. I. Facts and Procedural History The procedural history of Nooner’s case spans over a twenty-year period and encompasses numerous decisions on direct and collateral review from this court and the federal courts on multiple issues. We recite the procedural history here as it relates specifically to the issues of mitigating evidence raised in the instant motion, and as it relates generally to our later discussion of what Nooner terms an equitable claim to recall the mandate based on the interests of justice. A. Trial Nooner was tried by a jury for capital murder committed during the course of an aggravated robbery and theft of property at a laundromat in Little Rock during the early morning hours of March 16, 1993. Evidence at trial showed that Scot Sto-baugh was found, with the contents of his pockets emptied, lying face down in a pool of blood. He had been shot seven times at close range, twice in the arm and five times in the back. During the guilt phase of the trial, Nooner’s stepfather, Terry Hendricks, testified that Nooner had spent the night at home with him on the night of the murder. Despite this alibi testimony from Hendricks, the jury found Nooner guilty. During the penalty phase, Nooner called Hendricks as his only witness. Hendricks testified that Nooner was twenty-two years old at the time of the murder and had been removed from home when he was fourteen as a result of child-abuse charges brought against |SNooner’s mother. He stated that Nooner was placed in various foster homes and was eventually sent to Rivendell psychiatric clinic for several months. Hendricks stated that Nooner had a tenth-grade education, began abusing alcohol when he left home, and had a two-year-old son. Hendricks explained that he was just beginning to redevelop a relationship with Nooner since his removal from the home. He stated that he and his wife provided approximately eighty percent of the support for Nooner’s child, but that Nooner “was crazy about his son.” In sum, Hendricks testified that Nooner had a troubled childhood, that he abused alcohol, and that he had recently become a father. Despite this testimony, the jury unanimously found that, while two aggravating circumstances existed beyond a reasonable doubt, there was no evidence of any mitigating circumstances. The jury unanimously found further that the aggravating circumstances justified beyond a reasonable doubt a sentence of death. B. ■ Subsequent Procedural History This court affirmed Nooner’s conviction and death sentence on direct appeal. Nooner, 322 Ark. 87, 907 S.W.2d 677, cert. denied, 517 U.S. 1143, 116 S.Ct. 1436, 134 L.Ed.2d 558 (1996). Nooner then filed a petition for postcon-viction relief pursuant to Rule 37 wherein he asserted fundamental error in his trial as well as ineffective assistance of counsel for, among other things, failure to pursue a mental evaluation that would have produced mitigating evidence for the penalty phase of his trial. This court affirmed the circuit court’s denial of postconviction relief. Nooner v. State, 339 Ark. 253, 4 S.W.3d 497 (1999). In so doing, this court noted that the trial court carefully considered the testimony of Nooner’s trial counsel |4that they had carefully contemplated whether to request a mental evaluation and that they did, in fact, present mitigating evidence of Nooner’s troubled past through the testimony of Nooner’s stepfather. Id. This court therefore concluded that Nooner had not established that trial counsels’ decision not to request a mental evaluation constituted ineffective assistance of counsel. Id. Nooner filed a federal habeas petition challenging, among other things, the effectiveness of his trial counsel for failing to seek a mental evaluation that would have produced evidence of mitigating circumstances. On appeal, the Eighth Circuit' Court of Appeals affirmed the district court’s denial of the petition, determining that the record supported trial counsels’ judgment not to pursue psychiatric testing for purposes of mitigation and that this court’s conclusion that trial counsels’ judgment did not render counsel ineffective was not an unreasonable application of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Nooner v. Norris, 402 F.3d 801 (8th Cir. 2005), cert. denied, 547 U.S. 1137, 126 S.Ct. 2037, 164 L.Ed.2d 794 (2006). Nooner filed a subsequent petition for writ of habeas corpus, seeking an order permitting him to undergo a complete mental-health evaluation. The Eighth Circuit Court of Appeals granted a certificate of appealability and reversed and remanded the district court’s determination that Nooner’s petition was a second, or successive, petition under 28 U.S.C. § 2244(b). The Eighth Circuit found that the bar on a second, or subsequent, habeas petition did not apply to a petition raising claims of incompetency based on Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), and of mental retardation based on Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), if the petition was filed as soon as the claims were ripe. Nooner v. Norris, 499 F.3d 831 (2007) Inciting Stewart v. Martinez-Villareal, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998), and Panetti v. Quarterman, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007)). On remand to the district court, Nooner’s petition was dismissed without prejudice, based on the State’s agreement to a court-ordered mental evaluation. Nooner v. Norris, No. 5:96-cv-00495-JLH (E.D.Ark. Nov. 16, 2007) ECF No. 138. Nooner later sought and received permission to file a second federal-habeas petition, wherein he alleged for the first time his actual innocence, among other grounds for relief. His claim of innocence was based, in part, on (1) the recantation of trial testimony from one witness; (2) the recantation of statements that his accomplice, who did not testify at trial, made to police at the time of the murder; and (3) expert evidence measuring an individual’s height captured on crime-scene-surveillance video. The Eighth Circuit Court of Appeals affirmed the federal district court’s denial of Nooner’s second habeas petition, rejecting the theory that the expert evidence was new evidence and emphasizing the internal inconsistencies in both recantations as well as the general skepticism with which courts view recantations made long after the fact. Nooner v. Hobbs, 689 F.3d 921 (8th Cir.2012), cert. denied, — U.S. -, 134 S.Ct. 58, 187 L.Ed.2d 50 (2013). Nooner filed the instant motion to recall his direct-appeal mandate on December 13, 2012, just a few weeks after the Eighth Circuit Court of Appeals had affirmed the denial of his second habeas petition. While the instant motion was pending in this court, the Eighth Circuit Court of Appeals entered a written order on May 28, 2013, granting the State’s motion to dissolve the stay of execution that had been entered on September 14, 2007, in Nooner v. Norris, No. 5:08-cv-00003-JLH (8th Cir. May 28, 2013) ECF No. 120. Ifill. Motion to Recall Direct-Appeal Mandate In the present motion, Nooner contends that both the Eighth Amendment and this court’s precedent independently require recall of the mandate that this court issued in 1995 in Nooner’s direct appeal. Nooner asserts that there are two instances of a breakdown in the appellate process that he contends would justify recalling the mandate. First, based on Williams v. State, 2011 Ark. 534, 2011 WL 6275536, and the case on which it relied, Anderson v. State, 357 Ark. 180, 163 S.W.3d 333 (2004), Nooner asserts that the jury in his case committed reversible error when it marked the special-verdict forms to indicate that there was no evidence of mitigating circumstances because he did present mitigating evidence through his stepfather’s testimony that Nooner was twenty-two years of age at the time of the offense, that he had a troubled childhood, that he had abused alcohol, and that he had family ties and responsibilities. Second, Nooner asserts that the verdict forms and the prosecutor’s argument impermissibly instructed and directed the jury to evaluate the existence of mitigating circumstances only if they existed “at the time of the murder.” Additionally, Nooner asserts that the interests of justice and strong equitable considerations favor recall of the mandate because Nooner would then be able to provide “voluminous, weighty, and unambiguously mitigating evidence in the event of a resentencing.” This court agreed to take the motion as a case, and the parties have now filed briefs for our consideration. |7A. Standard for Reviewing Motions to Recall Mandate Before addressing the merits of Noon-er’s arguments in support of his motion to recall the direct-appeal mandate, we first note Nooner’s initial contention that, despite the use of mandatory language he describes as “restrictive dicta” in some of this court’s earlier cases, he need not satisfy the three-part test first announced in Robbins v. State, 353 Ark. 556, 114 S.W.3d 217 (2003), to demonstrate extraordinary circumstances that warrant recall of his direct-appeal mandate. Nooner argues that this court definitively held that in, Wooten v. State, 2010 Ark. 467, 370 S.W.3d 475, and Williams, 2011 Ark. 534, 2011 WL 6275536, the presence of a breakdown in the appellate process may in and of itself constitute extraordinary circumstances warranting a recall of this court’s mandate. The State counters that Nooner incorrectly expands the once sui generis standard for recall of a mandate first explained in Robbins to require that a mov-ant only has to demonstrate an error in the appellate process to be entitled to this extraordinary remedy. We acknowledge, as Nooner points out, that our cases have been inconsistent as to whether all three factors first announced in Robbins must be satisfied in every case; but, we agree with the State that our decision in Robbins is patently clear that recall of our mandate is an extremely narrow remedy. Indeed, we stated in Robbins that recall of our mandate is to be granted only in extraordinary circumstances as a last resort to “avoid a miscarriage of justice” or “to protect the integrity of the judicial process.” See Robbins, 353 Ark. at 563, 114 S.W.3d at 222 (quoting Calderon v. Thompson, 523 U.S. 538, 558, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), and Demjanjuk v. Petrovsky, 10 F.3d 338, 357 (6th Cir.1993)). | sRegardless of any inconsistencies in our decisions concerning the mandatory satisfaction of the three Robbins factors, what has remained consistent in these cases has been a discussion of the three Robbins factors and this court’s overarching concern that we will reopen a case only to address an “error in the appellate process,” meaning an error that this court made or overlooked while reviewing a case in which the death sentence was imposed. See, e.g., Engram v. State, 360 Ark. 140, 147, 148, 200 S.W.3d 367, 369, 370 (2004) (observing that the purpose of recalling the mandate in Robbins was to “correct an error in the appellate process” and emphasizing that “the Robbins case hinged on the fact that an error was made during this court’s review, and the recall of the mandate was intended to give this court an opportunity to address an issue it should have addressed before”). We have also been consistent in considering motions to recall mandates in criminal eases only where the death penalty has been imposed. See, e.g., Maxwell v. State, 2012 Ark. 251, 2012 WL 1950253 (per curiam). As to Nooner’s claim that he need only show a defect or breakdown in the appellate process in order to warrant recall of his direct-appeal mandate, we apply the definition of “error in the appellate process,” as that term was first used in Engram, which is “an error alleged to have been made by this court during the course of its appellate review” of a death-penalty case, and we emphasize that such error is to be distinguished from an error that “should have been [raised] to the trial court” and could not be “considered as falling within one of the so-called Wicks [v. State, 270 Ark. 781, 606 S.W.2d 366 (1980) ] exceptions,” or within our independent review of death cases pursuant to Rule 4-3 of the Arkansas Supreme Court Rules, and Rule 10 of the Arkansas Rules of Appellate Procedure-Criminal. Engram, 360 Ark. at 148, 151, 150, 200 S.W.3d at 370, 373, 372. Because we conclude, for reasons explained later herein, that Nooner cannot satisfy the first factor of demonstrating error in the appellate process, any further discussion of eliminating the other factors would be advisory in this case. The status of the three Robbins factors thus remains the same as it did prior to the present case — the three Robbins factors are relevant factors for this court to consider when presented with a motion to recall a mandate in a death-penalty case, although strict satisfaction of all three factors is not required. Strict satisfaction is not required because this court has the inherent authority to recall its mandate in extraordinary circumstances. See Robbins, 353 Ark. 556, 114 S.W.3d 217. As noted in Robbins, and first stated by the United States Supreme Court in Calderon, extraordinary circumstances are required due to “ ‘the profound interests in repose’ attaching to the mandate” of an appellate court. Robbins, 353 Ark. at 563, 114 S.W.3d at 222 (quoting Calderon, 523 U.S. at 550, 118 S.Ct. 1489). The inherent power of an appellate court to recall its mandate should therefore be used sparingly as a last resort; it is to be “held in reserve against grave, unforseen contingencies.” Id. And because the inherent act of this court in recalling its mandate is a discretionary act, or in the words of the Eighth Circuit Court of Appeals “an act of grace by the state that is not constitutionally mandated,” Wooten v. Norris, 578 F.3d 767, 784 (8th Cir.2009), this court would do well to maintain some means of an internal check on that discretion. Discussion of the three Robbins factors is a valid means then of ensuring that our discretionary act is not exercised arbitrarily. Discussion of the three Robbins factors is thus an appropriate means of determining whether extraordinary | mcircumstances exists to warrant recall of our mandate, even though our inherent power to recall our mandate is not limited by strict satisfaction of all three factors in all cases. B. Failure to Consider Evidence of Mitigating Circumstances Turning now to the merits of the motion to recall the mandate, we consider Noon-er’s first point in support of his motion. Nooner contends that because the jury checked option D of Form 2 (Form 2 D), which is the jury’s special-verdict form for mitigating circumstances, stating that “[tjhere was no evidence of any mitigating circumstance,” the jury impermissibly failed to consider or give meaningful effect to the relevant mitigating evidence he had presented. Nooner alleges that, based on the jury’s completion of Form 2 D, fundamental error occurred in his trial that this court failed to discover in its independent review on direct appeal. Nooner alleges further that this error is in a narrow class of manifest, fundamental defects in a death-sentencing proceeding that may be raised at any time, including on a motion to recall the mandate. In support of the foregoing argument, Nooner relies on this court’s decisions in Williams, 2011 Ark. 534, 2011 WL 6275536, and the case on which Williams relied, Anderson, 357 Ark. 180, 163 S.W.3d 333. He asserts that Williams is controlling here and cannot be distinguished from his case. Nooner contends that based on Williams, he has demonstrated error in his appellate process and that is all that he need demonstrate to obtain recall of his direct-appeal mandate. The State first responds that Nooner fails to cite any authority requiring this court to have raised this issue for him when it reviewed his direct appeal in 1995. In the absence of such authority, the State points out that Nooner relies on this court’s precedent from 2011 |nin Williams to establish a defect in his 1995 direct appeal. According to the State, Nooner erroneously reads Williams as holding that, in 2011, long after Nooner’s direct appeal in 1995, this court had a duty to sua sponte raise and consider an issue concerning his death sentence that was not error under then existing law. The State thus argues that Nooner erroneously reads Williams as having transformed the once extraordinary procedure for recalling this court’s mandate into a substitute for review of sentencing error in capital cases that can be raised at any time without complying with the time limits and procedural requirements for direct or belated appeals. The State asserts that this turns the principle of finality attached to appellate decisions on its head. To the extent that Williams holds that sentencing errors in capital cases can be raised at any time, the State asserts that Williams renders the extraordinary remedy of recalling the mandate less than ordinary and requests that we therefore overrule Williams. A close review of Williams is essential to resolution of this case. In Williams, this court was presented with a motion to recall a direct-appeal mandate that was based on two grounds: ineffective assistance of direct-appeal counsel and mental retardation. This court granted the motion and reversed the death sentence and remanded “for new sentencing based not on the specific arguments of Williams, but because there was indeed a breakdown in the appellate process in this death-penalty case.” Williams, 2011 Ark. 534, at 1, 2011 WL 6275536. The breakdown in the appellate process this court referred to was that “the jury in Williams’s case erred in marking section D of Form 2, indicating that no evidence of mitigation was offered, where evidence was clearly presented.” Id. at 4, 2011 WL 6275536. Raising this issue sua sponte, this court stated that it had 1 ^“previously reversed a death sentence and remanded for resentencing based upon the same error,” and cited Anderson, 357 Ark. 180, 163 S.W.3d 333. Id. at 4, 2011 WL 6275536. In reviewing Nooner’s argument that Williams controls his case and requires recall of Nooner’s direct-appeal mandate, we realize that our decision in Williams was made in error. In recognizing our error, we are guided by the words of this court in Whittington v. Flint, 43 Ark. 504 (1884): A rule of decision once deliberately adopted and declared ought not to be disturbed “by the same court, except for very cogent reasons and upon a clear manifestation of error.” But there are cases which “ought to be examined without fear, and revised without reluctance, rather than to have the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error.” Id. at 513-14 (quoting 1 Kent’s Comm., 476-11). We are therefore of the opinion that Williams, 2011 Ark. 534, 2011 WL 6275536, is “wrong, and that more good than harm would result from changing it at this time, and it is overruled.” Brickhouse v. Hill, 167 Ark. 513, 519, 268 S.W. 865, 867 (1925). We therefore overrule Williams v. State, 2011 Ark. 534, 2011 WL 6275536 in its entirety. Our error in Williams was three-fold. First, we did not acknowledge that, according to the law as it existed when we decided Williams’s direct appeal in 1995, there was no error in the way the jury had completed the verdict form on mitigating circumstances at Williams’s trial. See, e.g., Hill v. State, 289 Ark. 387, 713 S.W.2d 233 (1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1331, 94 L.Ed.2d 182 (1987) (rejecting argument that jury’s finding that “[tjhere was no evidence of any mitigating circumstance” indicated that the jury failed to consider mitigating evidence that was offered). Second, despite the applicable precedent of Hill, we applied the holding announced in Anderson, 357 Ark. 180, 163 S.W.3d 333, which was handed down in 2004, well after Williams’s direct appeal in 1995, without any discussion of the propriety of retrospective application of Anderson to the collateral attack on the judgment of conviction that Williams had mounted in his motion to recall the mandate or of why Hill was not controlling. Third, we did not acknowledge that, from the time of Williams’s direct appeal in 1995 to the time of Anderson’s direct appeal in 2004, the Arkansas Model Jury Instructions-Criminal used in death-penalty cases had been substantially amended. Compare AMI Crim. 1509 Form 2 D (Supp. 1982) (“There was no evidence of any mitigating circumstance”), with AMI Crim.2d 1008 Form 2 D (Supp.1986) (“No evidence of a mitigating circumstance was presented by either party during any portion of the trial. (Check only if no evidence of a mitigating circumstance was presented.”)). (Both Form 2s are reproduced in full for convenience and attached as appendices to this opinion.) Thus, when this court concluded in Williams’s motion to recall mandate that by checking option D of Form 2, Williams’s jury made “the same error” that Anderson’s jury had made-that was an erroneous conclusion on this court’s part. Anderson’s jury had, in fact, checked option D of Form 2, but it was not the same Form 2 D checked by Williams’s jury. Moreover, there was no evidence of jury confusion in Williams’s trial as there had been in Anderson’s trial. See Anderson, 357 Ark. at 222, 228, 163 S.W.3d at 359 (stating that “[w]hat concerns this court in the case at hand is the confusion on the part of the jury which apparently led the jury members to disregard any consideration of mitigating circumstances,” and noting that “[t]he jurors’ confusion in the instant case is | Hfurther evidenced by their request to the circuit judge for a definition of mitigating circumstances”). Because these errors in Williams result in a decision that stands for the proposition that this court will, on a collateral challenge to a judgment of conviction and sentence that has been affirmed and become final, apply our precedent retrospectively without analysis to find error in a previous decision that was consistent with then existing law, we have no choice but to overrule Williams, 2011 Ark. 534, 2011 WL 6275536 in its entirety. The doctrine of stare decisis yields when there has been palpable error in legal analysis. See Kincade v. C & L Rural Elec. Coop. Corp., 227 Ark. 321, 299 S.W.2d 67 (1957). In overruling Williams, we do not disregard the doctrine of stare decisis but recognize that we are not bound to perpetuate an erroneous decision “when the great importance of the question as it now presents itself could not be foreseen.” Brickhouse, 167 Ark. at 520, 268 S.W. at 867. Because we have overruled Williams, the question now is whether Nooner can otherwise demonstrate the error he alleges occurred in his trial-that the jury’s finding that “[tjhere was no evidence of any mitigating circumstance” indicates that the jury violated the Eighth Amendment and disregarded the mitigating testimony he had presented of his troubled childhood, alcohol abuse, his youth at the time of the murder, and his family ties and responsibilities. A review of our cases addressing the jury’s consideration of mitigating evidence in death cases leads us to conclude that Nooner cannot demonstrate the error he alleges. |1fiNooner’s jury was instructed in accordance with Arkansas Model Jury Instruction-Criminal 1509, the same instructions and verdict forms used in Williams’s trial. As previously noted then, Hill, 289 Ark. 387, 713 S.W.2d 233, is the controlling precedent for Nooner’s case. In Hill, this court concluded as follows when the jury found that “[tjhere was no evidence of any mitigating circumstance”: We do not interpret the jury’s action to mean that they did not consider the evidence of mitigation that was offered. Rather we find the jury determined that the appellant’s youth was not a mitigating factor, as they were entitled to do, and so indicated that no mitigating circumstances were found. No error was committed. Id. at 396, 713 S.W.2d at 238. Hill, 289 Ark. 387, 713 S.W.2d 233, has been cited with approval by this court many times. See, e.g., Hill v. State, 331 Ark. 312, 962 S.W.2d 762 (1998), which the State cites for the proposition that there is another reasonable interpretation when the jury selects option D of Form 2 to find that “[t]here was no evidence of any mitigating circumstance”: the jury heard and considered the evidence, but simply concluded, based on the weight or credibility of that evidence, that it was not mitigating evidence. In Hill, 331 Ark. 312, 962 S.W.2d 762, the appellant presented evidence that he had turned his life around while he was in prison, and this court quoted well-established law as follows: The State argues that even though Appellant could have changed his life in prison, the jury still could have concluded that this change was not a mitigating factor in his crime. We agree. This court has previously held that “[a] jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance.” Bowen [v. State, 322 Ark. 483,] at 497, 911 S.W.2d [555,] at 561 [ (1995) ] (citing Duncan v. State, 291 Ark. 521, 726 S.W.2d 653 (1987), and Hill v. State, 289 Ark. 387, 713 S.W.2d 233 (1986), cert. denied, 479 U.S. 1101 [107 S.Ct. 1331, 94 L.Ed.2d 182], and cert. denied, 484 U.S. 873 [108 S.Ct. 208, 98 L.Ed.2d 159] (1987)). This court held further that the jury alone determines what weight to give the evidence, and may reject it or accept all or any part of it the jurors believe to be true. Id. (citing Davasher v. State, 308 Ark. 154, 823 S.W.2d 863, cert. denied, 504 U.S. 976 [112 S.Ct. 2948, 119 L.Ed.2d 571] (1992), and Robertson v. State, 304 Ark. 332, 802 S.W.2d 920 (1991)). [[Image here]] Here, the fact that after consideration, the jury did not regard Appellant’s change as a mitigating factor was not an error, as the jury was free to believe or disbelieve Appellant’s witness. Id. at 317-18, 962 S.W.2d at 764. Nooner replies to the State’s citation to Hill with the argument that Anderson, 357 Ark. 180, 163 S.W.3d 333, implicitly overruled Hill, 331 Ark. 312, 962 S.W.2d 762. Citing Oldner v. Villines, 328 Ark. 296, 943 S.W.2d 574 (1997), Nooner argues that an earlier decision that has not been expressly overruled is implicitly overruled by subsequent decisions to the contrary. Anderson is not contrary to the Hill cases; it simply involved different death-penalty instructions and verdict forms. Compare AMI Crim. 1509, with AMI Crim.2d 1008. A comparison of the two verdict forms reveals that Anderson was not contrary to the law announced in both Hill cases, but was simply a correct result based on the forms and instructions used in Anderson’s trial. Indeed, Anderson relied on the new language of the amended form to hold that the jury’s decision to check Form 2 D was clearly in error. There can be no doubt that, when mitigating evidence is in fact presented to a jury, it is clear error for the jury to check AMI Crim.2d 1008 Form 2 D and to disregard the parenthetical instruction “[c]heck only if no evidence of a mitigating circumstance is presented.” To 117support its holding with respect to Form 2 D, the court in Anderson relied on the new language from option C of Form 2: ‘While the evidence may not have established that a mitigating circumstance ‘probably existed’ for the murder, it was certainly presented for that purpose.” Anderson, 357 Ark. at 221, 163 S.W.3d at 358 (emphasized language was added by amendment of option C of Form 2, AMI Crim.2d 1008). Noticeably absent from Anderson is any discussion of, or citation to, the Hill cases. Our holding in Anderson was an extension of the change in the amended Form 2.[1] Because of the amended language in Form 2, the Anderson holding did not contravene the Hill holdings. Anderson was decided in accordance with the amended language of the applicable verdict form and was not, therefore, contrary to the Hill cases. Thus, we disagree with Nooner’s assertion that Anderson overruled Hill, 331 Ark. 312, 962 S.W.2d 762, by implication. We find additional support for our conclusion that the Hill cases have not been overruled by implication because this court continues to cite them with approval even after Anderson was decided. See, e.g., Decay v. State, 2009 Ark. 566, 352 S.W.3d 319; Wertz v. State, 374 Ark. 256, 287 S.W.3d 528 (2008); and Williams v. State, 369 Ark. 104, 251 S.W.3d 290 (2007). This court has rejected the proposition that a case is impliedly overruled when lathis court continues to cite it with approval. See Goodwin v. Harrison, 300 Ark. 474, 780 S.W.2d 518 (1989). We find even further support for our conclusion that the Hill cases are still good law in Dansby v. Norris, 682 F.3d 711 (8th Cir.2012), cert. granted and judgment vacated sub nom. on other grounds by Dansby v. Hobbs, — U.S. -, 133 S.Ct. 2767, 186 L.Ed.2d 215 (2013). The Eighth Circuit Court of Appeals addressed Anderson, Williams, and Hill, and concluded that Hill is good law and consistent with the Eighth Amendment. Its reasoning is as follows: Dansby directs our attention to Williams v. State, 2011 Ark. 534 [2011 WL 6275536], where the Arkansas Supreme Court held that a jury’s decision to check Option D of Form 2 in a capital case was reversible error, because the defendant had presented “unrebutted evidence in mitigation.” Id. at 5 [2011 WL 6275536]. The court reasoned that if the jury did not believe that the evidence presented “rose to the level of mitigating evidence,” then it should have marked Option C of Form 2. Id. at 6 [2011 WL 6275536]. Applying its precedent in Anderson v. State, 357 Ark. 180, 163 S.W.3d 333 (2004), the court held that the jury’s completion of Form 2 meant that “the jury eliminated from its consideration all evidence presented of mitigating circumstances and sentenced Williams to death solely based on the aggravating circumstance, which is reversible error.” Williams, 2011 [Ark. 534], at 6 [2011 WL 6275536]. We note first that while Williams was decided after a panel of this court ruled on Dansby’s application to expand the certificate of appealability, Williams announced no new rule of law. Williams is an unpublished decision that applied the Arkansas court’s 2004 decision in Anderson.[2] Reviewing the matter nonetheless, and assuming for the sake of analysis that the claim is not procedurally defaulted, we conclude that Dansby has not made a substantial showing of a denial of a constitutional right. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 [120 S.Ct. 1595, 146 L.Ed.2d 542] (2000). Williams does not cite federal law, and |13neither does Anderson. It is not even clear that these state court decisions purport to apply the Eighth Amendment rather than Arkansas law.... [[Image here]] Dansby appears to propose a different Eighth Amendment rule-namely, that if the defendant submits evidence that he claims to be mitigating, then a failure of the jury to find that there was evidence of a mitigating circumstance violates the Eighth Amendment. Dansby identifies no decision of the Supreme Court of the United States that so holds, and the Arkansas Supreme Court actually rejects the proposition. In Hill v. State, 331 Ark. 312, 962 S.W.2d 762 (1998), the state supreme court held that “ ‘[a] jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance.’ ” Id. at 764 (quoting Bowen v. State, 322 Ark. 483, 911 S.W.2d 555, 561 (1995)). A jury, the court explained, may reject all or any part of a defendant’s mitigating evidence. 962 S.W.2d at 764. In this very case, the state supreme court cited Hill for that point in dismissing Dansby’s claim that his counsel was ineffective at the penalty phase because the jury found no mitigating factors. [Dansby v. State, 350 Ark. 60] 84 S.W.3d [857,] at 862-63 [ (2002) ]. Dansby’s jury was free to reject his proposed mitigating evidence. That the jury marked Option D on the verdict form does not translate into a substantial showing of a constitutional violation. Dansby, 682 F.3d at 725-26. The Eighth Circuit has thus rejected the very argument raised here, which is that the interplay between Williams, Anderson, and Hill, 331 Ark. 312, 962 S.W.2d 762, demonstrates that error occurred in violation of the Eighth Amendment when the jury found that there was no evidence of any mitigating circumstance even when a defendant had presented relevant mitigating evidence. Here, the bulk of Nooner’s mitigating evidence came from his stepfather, Mr. Hendricks, who also provided alibi testimony for Nooner during the guilt phase. Clearly, when the jury found Nooner guilty, they discounted Mr. Hendricks’s credibility, and it is therefore a reasonable possibility that the jury simply weighed Mr. | ^Hendricks’s testimony in mitigation but rejected it as the jury was entitled to do under Hill. See, e.g., Wertz v. State, 374 Ark. 256, 265, 287 S.W.3d 528, 535 (2008) (citing Hill with approval and concluding that “a jury is not required to find a mitigating circumstance just because the defendant puts before the jury some evidence that could serve as the basis for finding the mitigating circumstance”). Accordingly, Nooner has not demonstrated that error occurred at his trial with respect to the jury’s completion of the special-verdict forms on mitigating evidence, and his motion to recall the mandate is denied because he cannot demonstrate that a breakdown in the appellate process occurred during this court’s direct review of his conviction and death sentence. C. “At-the-Time-of-the-Murder” Restriction Nooner argues alternatively that his direct-appeal mandate should be recalled and his death sentence reversed because the sentencing instructions given in his case and the prosecutor’s repeated arguments erroneously directed the jury to find and weigh only those mitigating circumstances that existed “at the time of the murder,” in violation of the Eighth Amendment under Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated in part on other grounds by Atkins, 536 U.S. 304, 122 S.Ct. 2242, and Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986). At trial and at sentencing, Nooner presented relevant mitigating evidence such, as his tumultuous childhood, his history of mental or emotional disturbance, and his maintenance of a meaningful relationship with his father after the murder. However, according to Nooner, the special-verdict form instructed, and the prosecution repeatedly emphasized that the jury could only | ⅞1 consider mitigating circumstances that existed at the time of the murder. Citing the companion cases of Brewer v. Quarterman, 550 U.S. 286, 127 S.Ct. 1706, 167 L.Ed.2d 622 (2007), and Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 167 L.Ed.2d 585 (2007), Nooner contends that there is a reasonable likelihood that the jury understood the “at-the-time-of-the-murder” instruction to preclude it from considering or giving effect to the mitigating evidence he offered. Under these circumstances, argues Nooner, he has demonstrated an Eighth Amendment violation under Penry. United States Supreme Court precedent has long recognized that a sentencing jury must be able to give a “ ‘reasoned moral response’ ” to any relevant mitigating evidence when deciding to sentence a defendant to death. Brewer, 550 U.S. at 289, 127 S.Ct. 1706 (quoting Penry, 492 U.S. at 323, 109 S.Ct. 2934) (citing Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)). Thus, the Supreme Court has “repeatedly emphasized that a Penry violation exists whenever a statute, or a judicial gloss on a statute, prevents a jury from giving meaningful effect to mitigating evidence that may justify the imposition of a life sentence rather than a death sentence.” Brewer, 550 U.S. at 289, 127 S.Ct. 1706. Furthermore, the Supreme Court has made “[ejqually clear ... the corollary rule that the sentencer may not refuse to consider or be precluded from considering ‘any relevant mitigating evidence.’ ” Skipper, 476 U.S. at 4, 106 S.Ct. 1669 (quoting Eddings, 455 U.S. at 114, 102 S.Ct. 869). When the claim is that an instruction is ambiguous and therefore subject to an erroneous interpretation, “the proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way l^that prevents the consideration of constitutionally relevant evidence.” Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). Nooner asserts that this issue is within the narrow class of fundamental errors that may be raised in a motion to recall the mandate because the consideration of mitigating evidence is essential to consideration of the death penalty; therefore, this court was obligated to raise this issue sua sponte during its independent review on direct appeal, even in the absence of argument or objection below from defense counsel. Nooner asserts that we should grant recall of the mandate in order to correct this court’s failure to discover sua sponte on direct appeal the Eighth Amendment violation that he alleges occurred as a result of the “at-the-time-of-the-murder” restriction in the verdict form and in the prosecutor’s closing arguments. The State responds that Nooner fails to establish any obligation on this court’s part to have raised and considered this issue sua sponte on direct appeal, and, hence, fails to establish a defect in appellate proceedings to warrant recall of the mandate. We agree with the State that Nooner has not identified a reversible error that this court was obligated to raise sua sponte on his direct appeal; therefore, he has not demonstrated a breakdown in the appellate process required for the extraordinary circumstances that warrant recall of the mandate. First, based on Arkansas Supreme Court Rule 4 — 3(h) (1995), which was applicable to Nooner’s direct appeal in 1995, the scope of our review of death-penalty cases was limited to rulings on objections decided adversely to him. This limited review presupposed a contemporaneous objection at trial. As previously noted, this court’s ^mandatory review in death cases for prejudicial and egregious errors pursuant to Rule 10 is applicable only to cases in which a sentence of death has been imposed after August 1, 2001. See Newman v. State, 350 Ark. 51, 84 S.W.3d 443 (2002) (per curiam); see also State v. Robbins, 339 Ark. 379, 5 S.W.3d 51 (1999). Second, this court has previously concluded that the “at-the-time-of-the-murder” language in the mitigating-circumstances instruction and special-verdict form did not raise an issue subject to review when raised for the first time on appeal under Rule 10 or even as an exception to the contemporaneous-objection rule pursuant to Wicks, 270 Ark. 781, 606 S.W.2d 366. See Thessing v. State, 365 Ark. 384, 230 S.W.3d 526 (2006) (concluding that a challenge to the “at-the-time-of-the-murder” language did not rise to the level of serious error or a matter essential for the jury’s consideration of the death penalty). Nooner concedes that this court denied a similar Eighth Amendment claim on the merits in Thessing, 365 Ark. 384, 230 S.W.3d 526, but contends that Thessing is not controlling here because “the United States Supreme Court has made clear [that], whether there is a reasonable likelihood that a challenged instruction precluded the jury from considering relevant mitigating evidence is decided in context, on a case-by-case basis, rather than as a per se matter.” Nooner does not cite the case in which the Supreme Court made such a clear statement, but simply goes on to distinguish his case from Thessing in two respects. First, Nooner focuses on the prosecutor’s repeated comments in his case, such as “look at those mitigating circumstances. Ask yourself whether those existed at the time of this savage, 124vicious, cruel murder.” Nooner points to approximately five instances during closing arguments, at both the guilt phase and the penalty phase of the trial, in which the prosecutor made similar comments. He argues that those repeated comments make it more likely that the jury applied the instruction in such a way that it failed to give effect to the mitigating evidence he had offered that was not in existence at the time of the murder. Second, he points out that his jury found that no mitigating circumstances existed, while Thessing’s jury found that one mitigating circumstance existed. Therefore, he contends, his jury’s conclusions do not refute his hypothesis that the “at-the-time-of-the-murder” instruction constrained its consideration of the relevant mitigating evidence he had offered. Even if we acknowledge a distinction between Thessing, in which the jury found one mitigating circumstance, and Nooner’s case, in which the jury found no mitigating circumstances, we still do not think there is a reasonable likelihood that the jurors’ interpretation of the trial court’s instructions prevented their consideration of his troubled childhood, his recently established relationship with his father, and his having become a father himself. Nooner’s Form 2 listed all three potential mitigators under each option: A, B, and C; moreover, each option included a blank space for the jury to write in any additional mitigators that they might have found. Options A and C included the language challenged by Nooner, “at the time of the murder,” but option B did not. Thus, if one or more members of the jury felt constrained by the temporal language challenged here, they had the opportunity of so indicating by cheeking option B of Form 2. The jury did not, however, | ¾select any of the potential mitigators under option B, nor did the jury write in any other mitigators not specifically listed. We do not perceive the prosecutor’s comments as problematic because the jury was instructed that the opening statement, remarks by counsel during trial, and closing argument are not evidence. Arguments of counsel generally carry less weight with a jury than instructions from the court, as the former are usually billed in advance to the jury as matters of argument, not evidence, and the latter are viewed as definitive and binding statements of the law. See Boyde, 494 U.S. 370, 110 S.Ct. 1190. The jury is presumed to have followed the instructions given by the court. Anderson v. State, 353 Ark. 384, 108 S.W.3d 592 (2003). Under the foregoing facts, Nooner has not demonstrated a likelihood that the jury felt inhibited from considering the relevant mitigating evidence. We see a marked distinction between the instant case and the companion cases of Brewer and Abdul-Kabir on which Nooner relies. Those cases involved a refusal of the trial court to give any instruction on mitigating considerations. In comparison, Nooner has demonstrated, at best, only a possibility that the jury felt constrained by the “at-the-time-of-the-murder” instruction and argument. “[A] capital sentencing proceeding is not inconsistent with the Eighth Amendment if there is only a possibility” that the jury was inhibited from considering relevant mitigating evidence. Boyde, 494 U.S. at 380, 110 S.Ct. 1190. “There is, of course, a strong policy in favor of accurate determination of the appropriate sentence in a capital case, but there is an equally strong Impolicy against retrials years after the first trial where the claimed error amounts to no more than speculation.” Id. Even assuming that Thessing, 365 Ark. 384, 230 S.W.3d 526, is not controlling on a per se basis, Nooner has not identified a breakdown in the appellate process to warrant a recall of his direct-appeal mandate. D. Interests of Justice Demand Recall As a final point in support of recalling his direct-appeal mandate, Nooner contends that the interests of justice, as well as this court’s “steadfast commitment to ensuring fundamental fairness in capital cases,” require that his motion be granted, that his death sentence be vacated, and that his case be remanded for resentencing where a properly instructed jury should have the opportunity to consider all the evidence supporting a life sentence in his case. He argues further, in reply, that he would be able to provide “voluminous, weighty, and unambiguously mitigating evidence in the event of resentencing.” In his brief, he refers primarily to the 2007 report of Dr. Xavier Amador, Ph.D., which he attached to his motion and his brief, that documents how Nooner suffered chronic physical abuse and neglect during his childhood and that he also has a long and well-documented history of severe mental illness and was ultimately diagnosed with Schizophrenia. He also refers to the confession his accomplice made during federal-habeas proceedings that it was he, not Nooner, who actually committed the murder. See Ark.Code Ann. § 5-4-605(5) (Repl.2013) (specifying that it is |ma mitigating circumstance that “[t]he capital murder was committed by another person and the defendant was an accomplice and his or her participation was relatively minor”). As we observed when reciting the procedural history of this ease, the Eighth Circuit Court of Appeals found no merit to Nooner’s claim of actual innocence based on his accomplice’s recantation of his statements to police and his posttrial confession. Nooner, 689 F.3d 921. Nooner has therefore had collateral review of this issue in federal-habeas proceedings, and we are aware of no authority under which justice would demand recalling our direct-appeal mandate under these circumstances and reopening Nooner’s case for yet another review of this same issue. On these facts, the posttrial confession of Nooner’s accomplice does not warrant recall of the mandate, regardless of whether, had it occurred before trial, a jury could have considered it to be a mitigating circumstance pursuant to section 5-4-605(5). As for Nooner’s claim that he suffers from a severe case of Schizophrenia, we acknowledge his counsel’s concession that such an issue is not yet ripe for our consideration until a date for execution is set. We acknowledge further that counsel intends to seek a stay of execution, should one be set, based on the contention that Nooner is incompetent for execution under Panetti, 551 U.S. 930, 127 S.Ct. 2842, and Arkansas Code Annotated section 16-90-506(c)-(d) (Repl.2006). We are aware of no authority under which justice would demand that Nooner’s claim of incompetency to be executed be heard prematurely by granting the instant motion to recall the direct-appeal mandate. |28Because Nooner has had his day in court on his claim of actual innocence based on the confession of his accomplice, we conclude that the interests of justice do not weigh in favor of recalling the mandate; rather, they weigh in favor of the profound interests of repose that attach to an appellate court’s mandate. In addition, the interests of justice do not weigh in favor of recalling Nooner’s direct-appeal mandate to hear his not-yet-ripe claim of incompentency to be executed. III. Conclusion Our recitation in section I.B. infra of the procedural history of Nooner’s case demonstrates that he has had multiple levels of review, both direct and collateral, from both our state courts and the federal courts over a period of almost twenty years. According to these decisions, no fundamental or constitutional error has occurred. Nooner thus attempts to obtain an extraordinary remedy of last resort-a recall of his direct-appeal mandate. The reality is that there is nothing extraordinary about Nooner’s trial or his postcon-viction and collateral-review proceedings. This court’s procedure for recalling its direct-appeal mandate in death-penalty cases has been described as “an act of grace by the state that is not constitutionally mandated.” Wooten, 578 F.3d at 784. We must therefore be steadfast to our requirement that the remedy be granted only in the most extraordinary of circumstances, lest the remedy becomes ordinary and routine, and the finality of our state-court judgments destroyed. 12?)We have considered all of Nooner’s arguments, and conclude that none of them demonstrates extraordinary circumstances to justify recalling the mandate in his direct appeal. We therefore deny Nooner’s motion. HANNAH, C.J., and DANIELSON and HART, JJ., dissent. J^APPENDIX I [As used in Nooner v. State, 322 Ark. 87, 907 S.W.2d 677 (1995).] INSTRUCTION NO. [22 (AMI CRIM. 1509) ] FORM 2 MITIGATING CIRCUMSTANCES A.() We unanimously find that the following mitigating circumstances probably existed at the time of the murder: (Check applicable circumstances and specify any additional ones.) () The capital murder was committed while Terrick Terrell Nooner was under extreme mental or emotional disturbance. () The youth of Terrick Terrell Noon-er at the time of the commission of the capital murder. () Terrick Terrell Nooner has a long history of alcohol and drug abuse. () Other: Specify in Writing. B.() One or more members of the jury believed that the following mitigating circumstances probably existed, but the jury did not unanimously agree: () The capital murder was committed while Terrick Terrell Nooner was under extreme mental or emotional disturbance. () The youth of Terrick Terrell Noon-er at the time of the commission of the capital murder. () Terrick Terrell Nooner has a long history of alcohol and drug abuse. () Other: Specify in Writing. k- C.() There was evidence of the following mitigating circumstances, but the jury unanimously agreed that they did not exist at the time of the murder. () The capital murder was committed while Terrick Terrell Nooner was under extreme mental or emotional disturbance. () The youth of Terrick Terrell Noon-er at the time of the commission of the capital murder. () Terrick Terrell Nooner has a long history of alcohol and drug abuse. () Other: Specify in Writing. D.(X) There was no evidence of any mitigating circumstance. (Check if applicable.) /s/_ FOREMAN |,^APPENDIX II [As used and quoted in Anderson v. State, 357 Ark. 180, 163 S.W.3d 333 (2004).] AMI CRIM. 2D 1008 FORM 2 A. () We unanimously find that the following mitigating circumstance(s) probably existed: [[Image here]] B. () One or more members of the jury believed that the following mitigating circumstance(s) probably existed, but the jury did not unanimously agree that such mitigating circumstance(s) probably existed: [[Image here]] C. () There was some evidence presented to support the following circumstance(s). However, having considered this evidence, the jury unanimously agreed it was insufficient to establish that the mitigating circumstance(s) probably existed: (If any circumstances are checked in this section, you should not complete Section D. Any factor or factors checked in this section should not be checked again in any other section.) [[Image here]] D. () No evidence of a mitigating circumstance was presented by either party during any portion of the trial. (Check only if no evidence of a mitigating circumstance was presented.) . The point at which the dissent's view diverges from the majority view is in the analysis of the amended language in the verdict forms. The dissent sees the amended form as being only "slightly reworded,” while the majority sees the new language as a substantial and material amendment. It is the differing language between the two forms, rather than a misapplication of the law to the facts, that explains the differing results in the Anderson and the Hill cases. . We note that although the editors at West Publishing Company chose not to report the Williams opinion in its Southwestern Reporter, all opinions of this court issued on or after July 1, 2009, have precedential value and are officially published by this court on its website.