SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CR–07–1155

| | | |
|---|---|---|
| STEVEN VICTOR WERTZ | | **Opinion Delivered:** June 9, 2016 |
| | APPELLANT | |
| V. | | MOTION TO RECALL DIRECT-APPEAL MANDATE |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | MOTION GRANTED; DEATH SENTENCE REVERSED AND REMANDED FOR RESENTENCING. |

**ROBIN F. WYNNE, Associate Justice**

In 2007, Steven Victor Wertz was convicted of two counts of capital murder[1] by a Sharp County jury and sentenced to death. We affirmed his convictions on direct appeal. *Wertz v. State*, 374 Ark. 256, 287 S.W.3d 528 (2008). We subsequently affirmed the denial of his petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.5. *Wertz v. State*, 2014 Ark. 240, 434 S.W.3d 895. He has now filed a motion and supporting brief to recall the mandate entered following his direct appeal, in which he argues that this court's failure to sua sponte raise the issue of the submission of a single set of penalty-phase verdict forms following his conviction on two counts of capital murder[2] constitutes a

---

[1] Wertz was charged pursuant to Arkansas Statutes Annotated section 41–1501(c) (Repl. 1977), which states that "a person commits capital murder if with the premeditated and deliberated purpose of causing the death of any person, he causes the death of two or more persons in the course of the same criminal episode."

[2] At oral argument before this court, the State argued for the first time that Wertz was convicted of one count of capital murder under section 41–1501(c). In supplemental

defect or breakdown in the appellate process sufficient to justify recall of the mandate issued

following the disposition of his direct appeal. We grant the motion, reverse his sentence of

death, and remand for resentencing.

The essential facts of the case, as recounted in our opinion on direct appeal, are as

follows:

> On the morning of December 31, 1986, Kathy and Terry Watts were found dead in their Ash Flat home by Kathy's mother, Judy Bone. Ms. Bone found their almost one-year-old son [Joshua Watts], alive, near his father's body. During the investigation into the Wattses' deaths, it was discovered that a child-custody matter regarding another child was ongoing between Terry Watts and Wertz's then-wife, Belinda. Ultimately, Wertz became the primary suspect, and, the same day that the bodies were discovered, investigators traveled to Oklahoma, where the Wertzes resided, to inquire.
>
> At that time, Wertz told investigators that he and Jamie Snyder, Jr., the son of a friend, spent the night at Wertz's home on December 30, 1986. Wertz claimed that he had been sick that evening and that he had gone to the Tinker Air Force Base clinic the next day for treatment, which records corroborated. In addition to Wertz, another suspect was also investigated. In 1989, Glenn Collins, an inmate at the Arkansas Department of Correction, wrote two letters to the chief of the Ash Flat Police Department in which he confessed to committing two murders in Ash Flat "some three years ago." However, after being interviewed, Collins was eliminated as a suspect because, according to one investigator, his story did not match the crime scene. It appears from the record that, despite having suspects, police neither arrested nor charged anyone in connection with the murders until much later.
>
> In spring 2001, David Huffmaster of the Sharp County Sheriff's Department began to review the case file on the Wattses' murders after being contacted by Kathy Watts's sister, Chris Lindner, at a school function. In spring 2002, Huffmaster essentially reopened the case and, over the course of the next few years, conducted

---

briefing ordered by this court following oral argument, the State conceded that Wertz had been charged with, tried for, and convicted of two counts of capital murder but contended that the trial court had merged the two counts into one prior to the sentencing phase. The trial court's judgment and commitment order clearly reflects that Wertz was sentenced on two counts of capital murder. The State's contention is without merit. Further, there is no merit to the State's contentions that Wertz could have been charged with only one count or that the charges were filed as alternate means of proving the same offense.

interviews of some of the persons previously interviewed and involved in the original investigation. Huffmaster's interviews of both Belinda Stewart, who had been married to Wertz at the time of the crimes, but had since divorced him and remarried, and Jamie Snyder, Jr., yielded statements that led to an arrest warrant being issued for Wertz on April 27, 2006. On April 28, 2006, a felony information was filed, charging Wertz with two counts of capital murder. He was tried by a jury, was convicted, and as already stated, was sentenced to death.

374 Ark. at 257–58, 287 S.W.3d at 530. During the guilt phase, the jury heard testimony that Wertz was aware at the time of the murders that Kathy and Terry had a one-year-old child who lived in the home, as well as testimony that Wertz told Jamie Snyder Jr. prior to the murders that "anyone in the home over the age of eight would need to be eliminated as a possible witness." Prior to its deliberations during the guilt phase of the trial, the jury was given two sets of verdict forms: one set for the count related to the murder of Terry Watts, and a second set for the count related to the murder of Kathy Watts. The jury rendered a verdict of guilty on each count.

Arkansas Code Annotated section 5-4-603 requires a jury deliberating a possible sentence of death to complete three forms in addition to the verdict form. The first form requires the jury to determine whether any statutory aggravating factors exist beyond a reasonable doubt. The second form deals with the jury's findings regarding any existing mitigating factors. The third form requires the jury to determine whether any existing aggravating circumstances outweigh any existing mitigating circumstances and whether the aggravating circumstances justify a sentence of death. In the present case, after the sentencing-phase evidence had been submitted, the jury was given a single set of the section 5-4-603 forms. Form 1 listed two aggravating factors: (1) in the commission of the capital

murder, Steven Victor Wertz knowingly created a great risk of death to a person other than the victim; and (2) the capital murder was committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody. The jury indicated on the form that it found that both aggravating circumstances existed beyond a reasonable doubt at the time of the capital murder.[3] On Form 2, the jury found that there was no evidence of any mitigating circumstance.[4] On Form 3, the jury found (1) that one or more aggravating circumstances did exist, beyond a reasonable doubt, at the time of the commission of the capital murder; (2) the aggravating circumstances outweighed beyond a reasonable doubt any mitigating circumstances; and (3) the aggravating circumstances justify beyond a reasonable doubt a sentence of death. Form 4, the verdict form, gave the jury the option to impose a single sentence of either (A) life imprisonment without parole or (B) death. The jury voted unanimously to sentence Wertz to death.

This court will recall a mandate and reopen a case only in extraordinary circumstances. *Robbins v. State*, 353 Ark. 556, 114 S.W.3d 217 (2003). To establish the extraordinary circumstances that would warrant the recall of a mandate or the reopening of

---

[3]Wertz argued on direct appeal that the evidence did not support the jury's finding that the first aggravating factor was present. We rejected this argument. *Wertz*, 374 Ark. 256, 287 S.W.3d 528.

[4]Wertz's trial counsel indicated to the trial court that Wertz had instructed him not to investigate possible mitigating circumstances. We held on review of the denial of Wertz's Rule 37 petition that the failure to present mitigation evidence was not ineffective assistance of counsel. *Wertz*, 2014 Ark. 240, 434 S.W.3d 895.

a case, we have enumerated certain factors to be considered, namely (1) the presence of a defect in the appellate process, (2) a dismissal of proceedings in federal court because of unexhausted state-court claims,[5] and (3) the appeal is a death case that requires heightened scrutiny. *Ward v. State*, 2015 Ark. 62, at 2, 455 S.W.3d 830, 832. We have held that these factors are not necessarily to be strictly applied but rather that they serve as a guide in determining whether to recall a mandate. *Nooner v. State*, 2014 Ark. 296, 438 S.W.3d 233.

Wertz first argues that the combined penalty-phase verdict forms violated the Sixth and Fourteenth Amendments to the United States Constitution by permitting the jury to sentence him to death without unanimously finding beyond a reasonable doubt each fact necessary to impose death. For support, he cites *Ring v. Arizona*, 536 U.S. 584 (2002). In *Ring*, the United States Supreme Court held that Arizona's capital sentencing procedure, in which, after a jury adjudication of guilt, the trial court, sitting alone, determined the presence or absence of aggravating factors necessary to impose the death penalty, violated the Sixth Amendment right to jury trial in capital prosecutions. The holding in *Ring* is inapplicable here, as it was the jury, not the trial court, which determined the presence or absence of mitigating factors. The issue presented here does not touch on Wertz's Sixth Amendment right to a trial by jury, as all phases of the trial were held before a jury, and

---

[5]According to his brief, Wertz has not yet sought habeas relief in federal court pending our decision on this motion.

unlike *Ring*, all findings during sentencing were made unanimously by the jury. Wertz's claim of a Sixth Amendment violation is without merit.

Wertz next argues that the combined penalty-phase forms denied him the individualized sentencing and protection from invalid aggravating circumstances required under the Eighth Amendment to the United States Constitution. We find merit in this argument. In *Woodson v. North Carolina*, 428 U.S. 280 (1976) (plurality opinion), the court held that the Eighth and Fourteenth Amendments required an individualized sentencing procedure in capital cases. *See Jurek v. Texas*, 428 U.S. 262 (1976) (noting that the court held in *Woodson* that an individualized sentencing determination is required under the Eighth and Fourteenth Amendments). The Court stated in *Woodson* that "the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender *and the circumstances of the particular offense* as a constitutionally indispensable part of the process of inflicting the penalty of death." 428 U.S. at 304 (internal citation omitted) (emphasis added).

Here, the submission of a single set of verdict forms deprived the jury of the opportunity to separately consider the circumstances surrounding each of the murders in determining the punishment to be assessed for each count. Thus, the submission of a single set of verdict forms makes it impossible to determine whether the jury applied the aggravator to Terry's murder, Kathy's murder, or both murders. The submission of a single set of forms was an error that impacts the validity of the death sentence imposed by the jury, as, under our law, it is necessary for an aggravating factor to be found to exist before a death sentence can be imposed, and we cannot say from this record to which count or counts of capital murder the aggravators were applied. This error conflicts with the United States Supreme Court's requirement that capital sentencing procedures be especially reliable. *Romano v. Oklahoma*, 512 U.S. 1, 20–21 (1994); *Caldwell v. Mississippi*, 472 U.S. 320, 323 (1985).

The finding of error at trial does not end our analysis, as recall of the mandate is a narrow remedy, and it is necessary for us to determine whether the fact that this error was not addressed by this court on direct appeal constitutes a defect or breakdown in the appellate process sufficient to warrant recall of the mandate. We have defined an "error in the appellate process" as

> an error alleged to have been made by this court in its appellate review of a death-penalty case . . . such error is to be distinguished from an error that should have been raised to the trial court and could not be considered as falling within one of the so-called *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980) exceptions, or within our independent review of death cases pursuant to Rule 4–3 of the Arkansas Supreme Court Rules, and Rule 10 of the Arkansas Rules of Appellate Procedure–Criminal.

*Nooner*, 2014 Ark. 296, at 8, 438 S.W.3d at 239 (quoting *Engram v. State*, 360 Ark. 140, 148, 150, 151, 200 S.W.3d 367, 370, 372, 373 (2004)).



Although the murders occurred in 1986, Wertz was not tried until 2007 and his direct appeal was heard by this court in 2008. At that time, this court had a duty pursuant to Arkansas Supreme Court Rule 4–3(h) (2008) to review all rulings adverse to Wertz for prejudicial error. As no objection to the verdict forms was made at trial, there was no adverse ruling on this issue for this court to review. However, this court had an additional duty under Arkansas Rule of Appellate Procedure–Criminal 10(b)(ii) (2008) to review cases in which a sentence of death had been imposed to determine whether the trial court failed in its obligation to bring to the jury's attention a matter essential to its determination of the death penalty. In *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004), which was decided prior to our consideration of Wertz's direct appeal, we held that the erroneous completion of the sentencing forms in a capital murder case involved a matter essential to the determination of the death penalty. Here, although the jury completed the forms it was given, the erroneous submission of a single set of forms deprived the jury of the opportunity to determine which aggravators applied to which of the murders. In essence, the jury was deprived of the ability to correctly complete the forms, which, logically applying our holding in *Anderson*, involves a matter essential to the determination of the death penalty. Pursuant to Rule 10(b)(ii), we were required to raise such an issue as part of our review of the case on direct appeal. The failure to do so constitutes a defect in the appellate process as we have defined that term. The presence of a defect in the appellate process and the fact that Wertz received a sentence of death weigh heavily in favor of this court granting the motion to recall the mandate and ordering resentencing.

The motion to recall the mandate is granted, the sentence of death is reversed, and the matter is remanded for resentencing on both capital murder convictions.

Motion granted; death sentence reversed and remanded for resentencing.

DANIELSON and WOOD, JJ., dissent.

**PAUL E. DANIELSON, Justice, dissenting.** I dissent. The parties' arguments and the majority opinion focus on whether error occurred during the penalty phase of the trial; however, I think that the error in this case, if there was one at all, occurred during the guilt phase. From the record before us, it is clear that Wertz was charged with two counts of capital murder and that the jury returned verdicts of guilt on two counts. It is not clear that he was actually convicted of both counts.[1] As the majority acknowledges, Wertz was charged with capital murder pursuant to Arkansas Statutes Annotated section 41–1501(1)(c) (Repl. 1977), which provided that a person commits capital murder if:

(c) with the premeditated and deliberated purpose of causing the death of any person, he causes the death of two (2) or more persons in the course of the same criminal episode.

My review of our cases addressing capital-murder convictions under section 41–1501(1)(c) reveals that a person charged under that statute with causing two or more deaths was historically charged with, tried for, and convicted of only one count. *See, e.g.*, *See v. State*, CR 88-77 (Ark. May 10, 1989) (unpublished per curiam); *Watson v. State*, CR 85-221 (Ark. Sept. 19, 1988) (unpublished per curiam) ("There was only one charge of capital murder,

---

[1]The circuit court's judgment and commitment order lists "TOTAL NUMBER OF COUNTS" as "2"; on the other hand, only one "offense"—capital murder—is reflected below that line.

and there was only one conviction."). Accordingly, I question whether Wertz was properly charged and tried under the statute.

For this reason, rather than rule on Wertz's motion to recall the direct-appeal mandate at this juncture, I would order supplemental briefing from the parties on the issue of whether a double-jeopardy violation occurred. From the record and the briefs now before us, I am unable to answer that question with certainty, and I would request that the parties address and develop the issue.

**RHONDA K. WOOD, Justice, dissenting.** I would deny Wertz's motion to recall the mandate because he cannot satisfy two of the three factors we traditionally use when deciding these motions. We first established these three factors in *Robbins v. State*:

(1) A decision by this court "on all fours legally with the issue presented";
(2) A dismissal of a *habeas* petition by a federal district court to exhaust state claims; and
(3) A death-penalty case.

353 Ark. 556, 564 114 S.W.3d 217, 222–23 (2003). We further stated that, in order to recall the mandate, there must be "extraordinary circumstances." *Id.* We granted petitioner's motion in *Robbins* because these three factors were present: a prior case, *Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995) was on all fours legally; the federal district court had dismissed the habeas petition; and the death-penalty had been imposed. Importantly, *Robbins* was intended to be "one of a kind, not to be repeated." *Id.*

We applied the *Robbins* factors in other cases as well. For example, we denied a motion to recall the mandate where the only factor present was the imposition of the death-penalty. *Echols v. State*, 360 Ark. 332, 338, 201 S.W.3d 890, 894 (2005). And we granted relief in *Lee v. State*, 367 Ark. 84, 238 S.W.3d 52 (2006). There, petitioner asked us to recall

10

the mandate in his Rule 37 proceedings because his counsel during those proceedings had been intoxicated. Notably, before addressing petitioner's claim, we reformulated the first factor from *Robbins*, changing it from "a case on all fours legally" to "a breakdown in the appellate process." *Id*. at 88, 238 S.W.3d at 55.

The three factors changed again in *Nooner v. State*, 2014 Ark. 296, 438 S.W.3d 233. There, we said that the *Robbins* factors were "relevant" though that "strict satisfaction of all three factors was not required." *Id*. at 9, 438 S.W.3d at 239. We also clarified "breakdown in the appellate process" to mean "an error alleged to have been made by this court during the course of its appellate review." *Id*. However, we reaffirmed the principle that a motion to recall the mandate should "be used sparingly as a last resort . . . [and] 'held in reserve against grave, unforeseen contingencies.'" *Id*. (citing *Robbins*, *supra*). We later denied petitioner's motion to recall the mandate when there was a problem with the mitigating-factor jury instruction because petitioner failed to demonstrate error. *Id*. at 20, 438 S.W.3d at 245.

I would return to the *Robbins* factors, which have been unnecessarily eroded. Yet even under the current formulation, only the third factor is present: the death-penalty has been imposed. The other two factors are missing. First, there was no breakdown in the appellate process. Nor is there a case on all fours legally.[6] Second, as even Wertz admits, his

---

[6] The majority's misuses *Anderson v. State*, which has no similarities to this case. In *Anderson*, the jury marked the sentencing form that said "No evidence of a mitigating circumstance was presented." 357 Ark. 180, 219, 163 S.W.3d 333, 357 (2004). However, during sentencing, the defendant had offered evidence regarding his abusive family and troubled childhood. We concluded that the jury failed to consider mitigating evidence and reversed and remanded for resentencing. Here, though, the issue involves aggravating

federal habeas petition has not been dismissed for failure to exhaust state remedies. Because these two factors are missing, and because this case otherwise presents no extraordinary circumstances, I would deny the motion to recall the mandate.

*Jenniffer Horan*, Federal Public Defender, by: *John C. Williams*, Assistant Federal Public Defender, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rebecca B. Kane*, Ass't Att'y Gen., for appellee.

---

circumstances. And there is no evidence that the jury failed to consider any mitigating factors, which was the crux of the *Anderson* case.