RICHARD S. HORTON, TRUSTEE, v. STATE OF NEBRASKA, EX REL. WILLIAM HAYDEN ET AL.

FILED NOVEMBER 20, 1901.  No. 12,157.

Commissioner's opinion, Department No. 2.

1. Mandate.  When the judgment of a district court is reversed, a mandate is the proper and legal mode of communicating the judgment and directions of the supreme court to such district court.

2. Jurisdiction of Supreme Court to Alter or Modify Its Own Judgments.  The jurisdiction of the supreme court to alter or modify its judgments continues during the whole of the term at which its final judgment is rendered, unless its mandate is acted upon in the district court.  But when the mandate of the supreme court is acted upon and carried into effect by the district court, the power of the supreme court over its judgment is at an end.

3. District Court Should Await Mandate: WAIVER.  In order to prevent conflict, a district court whose judgment has been reversed should defer action until the mandate of the supreme court is before it, although, where both parties proceed without objec-

tion, the irregularity in so doing without a mandate on file may not be taken advantage of thereafter.

4. **Order Unadvised or Irregular.** When it is manifest on the face of the record that the court has acted irregularly and unadvisedly, it may, and should, so long as its jurisdiction over its own order continues, undo it as soon as the facts come to its notice.

5. **Rule in Case of Dismissal.** The rule that the court has full power and control over its judgments and orders during the term at which they are rendered applies to an order of dismissal entered at the instance of a plaintiff.

6. **Right of Plaintiff to Dismiss Not Absolute: POWER OF COURT.** The right of a plaintiff to dismiss his action is not absolute in the sense that the court has no power over or discretion with respect to its exercise. Whenever justice to the court or its officers or to any of the parties requires imposition of terms or retention of the cause upon the docket, the court, in its discretion, may impose such terms or refuse to permit dismissal.

7. **Discretion to Protect Rights Not Formally Asserted in Record.** Such discretion depends upon the existence of rights which would be jeoparded by dismissal, not upon the manner in which the court may become cognizant of them, and is not conditioned upon some formal claim or assertion of them in the record.

8. **Restitution: SUMMARY PROCEEDINGS.** Where a party to a cause has obtained money or property under or by virtue of a judgment which is afterwards reversed, the court has power to compel restitution by summary proceedings in that cause.

9. **Restitution Matter of Right.** Such restitution is a matter of right and does not depend upon the merits of the controversy between the parties.

10. **Record: EVIDENCE ALIUNDE: ORDER TO SHOW CAUSE.** Where the record shows that money has been collected or obtained under and by virtue of the judgment afterwards reversed, restitution should be awarded as of course. Where such fact does not clearly appear upon the record, but is made to appear *aliunde*, the proper procedure is by order to show cause why restitution should not be made.

ERROR from the district court for Douglas county. Tried below before DICKINSON, J. *Reversed.*

*James W. Hamilton* and *Richard S. Horton*, for plaintiff in error.

*George E. Pritchett* and *Smyth & Smith, contra.*

Argued orally by *Hamilton,* for plaintiff in error; by
*Smyth, contra.*

POUND, C:

This proceeding was brought to obtain a writ of man-
damus commanding certain officers of the Greater-America
Exposition to draw, issue and deliver to relators an
unconditional warrant upon the treasurer of said corpo-
ration for the payment to them.of the sum of $10,000. The
district court allowed the writ. Error was taken to this
court, which held that the proceedings below were un-
warranted and the writ improvidently allowed, reversed
the judgment and remanded the cause. *Horton v. State,*
60 Nebr., 701. A motion for rehearing having been filed
on behalf of relators, which was not disposed of until the
opening of the January, 1901, term of this court, a man-
date issued on January 28. This mandate was not filed
or docketed in the district court until March 23. Two
days before, on March 21, the relators appeared in that
court and procured an order of dismissal. When the
mandate was filed, this order was set aside *ex parte* at the
instance of defendant, on the ground that it had been
rendered prematurely, and on the same day, March 23, on
motion of the defendant Horton, supported by an affi-
davit showing that $10,000 of the moneys of the corpora-
tion had been paid to, and obtained by, relators under and
by virtue of said writ of mandamus, an order issued re-
quiring relators to show cause on or before March 30 why
restitution of said moneys and interest thereon should not
be awarded. The relators, having been served with said
order, appeared specially and objected to the jurisdiction
of the court. At the hearing, the district court held that
it had jurisdiction to render the order of dismissal on
March 21, that it had no jurisdiction to set such order
aside on March 23 nor to enter the order to show cause on
the same date and sustained the objections. Error is
prosecuted from this ruling.

The argument made on behalf of relators is that as soon as the cause was determined in this court and a mandate issued, the district court was reinvested with jurisdiction and might properly act without having the mandate before it; that the right of a plaintiff to dismiss, in the absence of some pleading, showing or claim of the adverse party on file entitling the latter to relief, is absolute, and that the order of March 21 was made with full jurisdiction, giving effect to this absolute right of dismissal; that even if such order was prematurely made, and the court had the power to set it aside, in the absence of some application by the defendants for relief, on file at the time, it should not have done so and hence, in any event, the final action of the court was right. We are unable to agree to these propositions under the circumstances disclosed by the record. While it is true that the Code of Civil Procedure provides in express terms only for a special mandate, which is to issue where a judgment is reversed and a new judgment entered in the supreme court, it does not follow that mandates are abolished or rendered unnecessary in all other cases. Under various names, mandate, remittitur, or *procedendo,* such process from the appellate court to the lower tribunal is in general use in all common-law jurisdictions. Where a judgment is affirmed, indeed, the mandate has no office to perform and may be dispensed with. *State v. Sheldon,* 26 Nebr., 151. But where a judgment is reversed, a mandate is the usual, and it seems to us, the only legal method of communicating the ruling of the one court to the other with authority. It is the judgment of this court which the lower court is to look to, not its opinion, and it must be obvious that some authentic and official notification of the judgment affords the only sure basis for further proceedings. This is furnished by the mandate, which is "the official mode of communicating the judgment of the appellate court to the lower court." 13 Ency. Pl. & Pr., 837. Such, moreover, is the settled and recognized practice in this state. *State v. Sheldon, supra; State v. Omaha Nat. Bank,* 60 Nebr.,

232. As between the opinion and such official state-
ment of the judgment in a mandate, the district court
must be guided by the latter. *Merriam v. Gordon,* 20
Nebr., 405, 408. Hence we are not able to assent to the
proposition advanced by counsel that, in the absence of an
express statutory requirement of a mandate, "any way in
which the court can be satisfied of the action of the su-
preme court will answer the purpose." It has been held
that where no mandate is issued, the lower court will not
act on a certified copy of the judgment of the appellate
court. *Oregon R. & N. Co. v. Hertzberg,* 26 Ore., 216,
37 Pac. Rep., 1019. The statute recognizes a mandate as
the proper legal mode of communication, and, assuming
this, provides for a special mandate in certain special
cases. The very use of the term "special mandate" implies
that for ordinary cases there is to be a general mandate.
The cases which have been cited as leading to a contrary
conclusion are not inconsistent with this view, as we shall
show in another connection.

The jurisdiction of the supreme court over its own judg-
ments and orders is, in general, the same as that of any
other court of record, and hence it may alter or modify
such judgments or orders and correct its mandates ac-
cordingly at any time during the term at which they are
rendered, unless its mandate has been filed and acted upon
in the lower court prior to the end of the term. *Bronson
v. Schulten,* 104 U. S., 410, 415; *People v. Nelliston,* 79
N. Y., 638; *Trowbridge v. Sickler,* 48 Wis., 424, 428.
Obviously there must be some point of time at which the
jurisdiction of the one court ceases and that of the other
court attaches, and, while the subject is not free from
judicial conflict, we think the sounder rule draws the line
at the time when the mandate is acted upon and carried
into effect. *Merriam v. Gordon, supra; People v. Nellis-
ton, supra.* But it may be observed that the weight
of authority fixes the transfer of jurisdiction at the time
when the mandate has been filed in the court below. *Leese
v. Clark,* 20 Cal., 387; *Zorn v. Lamar,* 71 Ga., 85; *King v.*

*Ruckman,* 22 N. J. Eq., 551; *Whaley v. Bank of Charleston,* 5 Rich. (S. C.), 262; *Ward v. Springfield Fire & Marine Ins. Co.,* 12 Wash., 631, 42 Pac. Rep., 119. And such rule would be equally consistent with the view we take of this case. Counsel in contending that the issuance of a mandate terminates the jurisdiction of the appellate court and gives jurisdiction to the lower court, point out that the practice in altering or modifying a judgment is to recall the mandate. But we think the object of this is to stay action thereon while the appellate court is considering what modification shall be made, and that the acknowledged power to recall the mandate before it is carried into effect argues jurisdiction in the appellate court. For these reasons, and in order to prevent unseemly conflict of authority, we think that a district court whose judgment has been reversed should defer action until the mandate of the supreme court is before it. 13 Ency. Pl. & Pr., 837; *Trowbridge v. Sickler,* 48 Wis., 424; *Wright v. King,* 107 Mich., 660, 65 N. W. Rep., 556; *Barnwell v. Marion,* 56 S. C., 54, 33 S. E. Rep., 719; *Lafferty v. Rutherford,* 10 Ark., 453; *Oregon R. & N. Co. v. Hertzberg,* 26 Ore., 216, 37 Pac. Rep., 1019; *McAlpin v. Bennet,* 21 Tex., 535. If, however, both parties proceed without objection in the absence of a mandate, if the provisions of the judgment of reversal are carried out, and trial had, we do not doubt that the irregularity is not to be taken advantage of by either party in appellate proceedings. It is fundamental that no error is available in such proceedings unless prejudicial, and such an irregularity would be technical only and without serious results. Many cases of that character have been cited to us, and we fail to perceive that they militate against our conclusion in any way. As the district court entered its first order at a time when the mandate was not before it, and in the absence of any authentic record of what had been done in the supreme court, we think it did right in treating such order as it would any other unadvised and improvident action and setting it aside at once. All judg-

ments and orders of the court are under its control during the term at which they are rendered. In ordinary cases the proper, and perhaps even the necessary, course is by motion and notice. But, when it is manifest on the face of the record that the court has acted irregularly and unadvisedly, it may and should, so long as its power over the act in question continues, undo it as soon as the facts come to its notice. *Alspaugh v. Ionia Circuit Judge*, 85 N. W. Rep. [Mich.], 244. And it may do this regardless of the form in which application for such action is made. *Bradley v. Slater*, 58 Nebr., 554.

We think the general rule that the court has full power and control over its judgments and orders during the term at which they are rendered applies to an order of dismissal entered at the instance of a plaintiff, the same as to any other order. If the right of a plaintiff to dismiss were absolute and the action of the court following thereon ministerial only, the rule might not apply. But this right is not absolute in the sense that the court has no power over, or discretion with respect to, its exercise. On the contrary, the court, in its discretion, may refuse to dimiss whenever justice to the court, or its officers, or to any of the parties, requires imposition of terms, or retention of the cause upon the docket. *Sheedy v. McMurtry*, 44 Nebr., 502, 503; *Beals v. Western Union Telegraph Co.*, 53 Nebr., 602. In the case first cited this court said: "The existence of the right of a plaintiff to dismiss at any time during the pendency of a cause, as a general proposition, must be qualified, and is not absolute in the sense that it takes the subject without the control of the court in which the cause is pending, so that it can not, within its discretion, impose the condition of the payment of costs as obligatory and precedent to a dismissal of the action." This discretion has been exercised to require payment of costs. *Sheedy v. McMurtry, supra;* to protect rights of attorneys under agreements as to fees, *Byron v. Durrie*, 6 Abb. New Cas. [N. Y.], 135; to protect a defendant in his plea of estoppel from the danger of possible transfer of a lien, *Stevens*

Horton v. State.

*v. Railroads,* 4 Fed. Rep., 97; and to enable a defendant to obtain restitution, *Lane v. Morton,* 81 N. C., 38. Of course, there must be some real and substantial right which has accrued to the adverse party in the very cause sought to be dismissed. Collateral consequences, such as subjection of the defendant to further litigation, or purposes not connected with the action in question, will not be allowed to interfere with the right given to plaintiffs by statute. *Banks v. Uhl,* 6 Nebr., 145. Hence, ordinarily, the dismissal will be allowed as of course. *Beals v. Western Union Telegraph Co.,* 53 Nebr., 602. But we know of no case appealing to a court more strongly for application of its discretionary power than one in which money or property has been taken under an unwarranted and improvident judgment, which has been reversed, and the adverse party is entitled to restitution. It would require convincing argument and strong weight of authority to persuade us that a dismissal could be had as a matter of right in such case, before mandate filed and without reasonable opportunity to direct the court's attention to the claim for restitution, and the defendant thus deprived of his summary remedy and driven to the difficult and expensive remedy of another action. The discretion of the court in such cases is grounded on the requirements of justice to itself, its officers, and the adverse parties. It depends upon the existence of rights which would be jeoparded by dismissal, not upon the manner in which the court becomes cognizant of such rights. The absence of a formal claim or assertion thereof upon the record does not necessarily give the plaintiff advantage. It was within the discretion of the district court to refuse to dismiss the cause in order to protect the defendant's right of restitution. That being so, it had power, during the term, to set aside an unadvised dismissal for the same purpose.

Where a party to a cause has obtained money or property under or by virtue of a judgment which is afterwards reversed, the court has power to compel restitution by summary proceedings in that cause. *Anheuser-Busch*

*Brewing Ass'n v. Hier,* 55 Nebr., 557, 558; *Northwestern. Fuel Co. v. Brock,* 139 U. S., 216; *Bickett v. Garner,* 31 Ohio St., 28; *Eames v. Stevens,* 26 N. H., 117. Such restitution is a matter of right and does not depend upon the merits of the controversy between the parties, the probabilities of another judgment to the same effect, or the solvency of the party entitled to the restitution. *Hier v. Anheuser-Busch Brewing Ass'n,* 60 Nebr., 320; *Bickett v. Garner, supra; Morgan v. Hart,* 9 B. Mon. [Ky.], 79. "The defendant having been put out of possession by an abuse of the process of the law, the law must be just to itself, as well as to the defendant, by restoring him to that of which he was wrongfully deprived. When the defendant is restored to the possession, then, and not until then, will the court be in condition in which it can honorably to itself pass upon the further rights of the parties." *Hier v. Anheuser-Busch Brewing Ass'n, supra.* In the common-law practice, whenever the record showed that money had been collected by virtue of and applied upon the reversed judgment, a writ of restitution issued as of course. If the facts were not sufficiently disclosed by the record, a writ of *scire facias* issued. *United States Bank v. Bank of Washington,* 6 Pet. [U. S.], 8, 17; *Gay v. Smith,* 36 N. H., 435; *Martin v. Woodruff,* 2 Ind., 237. Under our practice, the order to show cause entered by the district court would be the equivalent of the latter proceeding. In the case at bar there is only a return of the sheriff that he served the peremptory writ of mandamus upon the defendants. There is no further return, and the record does not disclose whether the warrant was drawn, issued and delivered, nor whether it was paid in whole or in part. Did the record show compliance with the writ and payment and receipt of the money in obedience thereto and in consequence thereof, restitution should be awarded as of course, and we should feel bound to direct a judgment of that nature in the district court. *Anheuser-Busch Brewing Ass'n v. Hier,* 55 Nebr., 557. But, as such facts are made to appear *aliunde,* we think the course entered upon

by the district court, namely, the order to show cause why restitution should not be made, was right, and that the court erred only in not pursuing the path it had taken. We are asked to make certain admissions in the briefs of counsel for relators the basis of a direction of judgment of restitution. But we do not think those admissions are so clear and unequivocal as to warrant us in so doing. Much is said in argument, by way of illustration or hypothesis, to which the full weight of an admission in open court ought not to be given. Unless an admission of counsel is made as such expressly with the expectation that it will be treated and acted on as such, or is so clear and unequivocal that its purport may not be mistaken, it should not be made the basis of a judgment.

It is recommended that the judgment be reversed and the cause remanded for further proceedings under the order to show cause why restitution should not be adjudged not inconsistent with this opinion.

SEDGWICK and OLDHAM, CC., concur.

By the Court: For the reasons set forth in the foregoing opinion, the judgment of the district court is reversed and the cause is remanded for further proceedings under the order to show cause why restitution should not be adjudged not inconsistent with said opinion.

REVERSED AND REMANDED.