John Dan Kemp, Chief Justice, dissenting.
Petitioner Bruce Earl Ward moves this court to recall the mandate from his resentencing in Ward v. State , 338 Ark. 619, 1 S.W.3d 1 (1999) ( Ward III ) (affirming his death sentence). The majority has denied Ward's motion to recall the mandate. For the reasons set forth in this dissent, I would grant the motion.
Ward argues that this court should recall the mandate in Ward III , 338 Ark. 619, 1 S.W.3d 1, to correct a defect in the appellate process. Ward contends that he was unconstitutionally deprived of any meaningful assistance of a mental-health expert in violation of Ake v. Oklahoma , 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and McWilliams v. Dunn , 582 U.S. ----, 137 S.Ct. 1790, 198 L.Ed.2d 341 (2017). Ward asserts that this court's precedent-that compliance with Arkansas Code Annotated section 5-2-305 (Supp. 1989) and that providing a state examination satisfies the constitutional requirement of Ake -does not comport with the Court's holding in McWilliams , 582 U.S. at ----, 137 S.Ct. 1790. Ward maintains that his motion to recall the mandate should be granted on this basis. I agree.
I. Ake and McWilliams
A. Ake
The Supreme Court of the United States held in Ake , 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53, that when a defendant "has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a state provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." Ake , 470 U.S. at 74, 105 S.Ct. 1087. This "preliminary showing" includes that (1) the defendant is an "indigent defendant," 470 U.S. at 70, 105 S.Ct. 1087 ; (2) his *558 "mental condition" was "relevant to ... the punishment he might suffer," 470 U.S. at 80, 105 S.Ct. 1087 ; and (3) his "sanity at the time of the offense ... was seriously in question." 470 U.S. at 70, 105 S.Ct. 1087. Once that preliminary showing is made, the State must
at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.
Ake , 470 U.S. at 83, 105 S.Ct. 1087 (emphasis added).
Courts in other jurisdictions have split over their interpretation of the requirements articulated in Ake . The Eleventh Circuit noted that
[i]n some jurisdictions, a court-appointed neutral mental health expert made available to all parties may satisfy Ake . See Miller v. Colson , 694 F.3d 691, 697-99 (6th Cir. 2012) (discussing the split amongst Sixth Circuit decisions that address whether a neutral mental health expert satisfies Ake ), cert. denied ; Granviel v. Lynaugh , 881 F.2d 185, 191-92 (5th Cir. 1989) (holding that Ake is met when the government provides a defendant with neutral psychiatric assistance), cert. denied. Other circuits have held that the state must provide a non-neutral mental health expert to satisfy Ake . See United States v. Sloan , 776 F.2d 926, 929 (10th Cir. 1985) (holding that a defendant is entitled to independent, non-neutral psychiatric assistance); Smith v. McCormick , 914 F.2d 1153, 1158 (9th Cir. 1990) ("[U]nder Ake , evaluation by a 'neutral' court psychiatrist does not satisfy due process."). However, the United States Supreme Court has thus far declined to resolve this disagreement among the circuits. See Miller , 694 F.3d at 697 n. 6 ; Granviel v. Texas , 495 U.S. 963, 110 S.Ct. 2577, 109 L.Ed.2d 758 (1990) (denying certiorari). As a result, the State's provision of a neutral psychologist would not be "contrary to, or involve[ ] an unreasonable application of, clearly established Federal law." See 28 U.S.C. § 2254(d)(1).
McWilliams v. Comm'r , 634 Fed.Appx. 698, 705-06 (11th Cir. 2015) (per curiam).
On appeal to the Supreme Court, McWilliams argued that " Ake clearly established that a State must provide an indigent defendant with a qualified mental health expert retained specifically for the defense team, not a neutral expert available to both parties " (emphasis added). McWilliams , 137 S.Ct. at 1799. The Court asserted that
[a]s a practical matter, the simplest way for a State to meet this standard may be to provide a qualified expert retained specifically for the defense team. This appears to be the approach that the overwhelming majority of jurisdictions have adopted. See Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 8-35 (describing practice in capital-active jurisdictions); Tr. of Oral Arg. 40 (respondent conceding that "this issue really has been mooted over the last 30-some-odd years because of statutory changes"). It is not necessary, however, for us to decide whether the Constitution requires States to satisfy Ake 's demands in this way. That is because Alabama here did not meet even Ake 's most basic requirements.
McWilliams , 137 S.Ct. at 1799-80.
B. Arkansas Law Interpreting Ake
Since the Supreme Court's Ake decision in 1985, this court has interpreted Ake to mean that when a psychiatrist examines a defendant at the state hospital, as provided *559 by statute,[1] the Ake requirements have been satisfied. See Ward v. State , 2015 Ark. 61, 455 S.W.3d 818 ( Ward VI ) (holding that a competency evaluation at the Arkansas State Hospital satisfied Ake ); Creed v. State , 372 Ark. 221, 224, 273 S.W.3d 494, 497 (2008) (stating that "a defendant's right to examination under Ake is protected by an examination by the state hospital as provided by" Arkansas statute); Dirickson v. State , 329 Ark. 572, 953 S.W.2d 55 (1997) (holding that a defendant's right to examination under Ake is protected by an examination by the state hospital as provided by Arkansas Code Annotated section 5-2-305 ); Sanders v. State , 308 Ark. 178, 824 S.W.2d 353 (1992) (holding that a review by the state hospital is sufficient under Ake and that a defendant is not entitled to a second opinion); Day v. State , 306 Ark. 520, 524, 816 S.W.2d 852, 854 (1991) (stating that a defendant's right to an examination under Ake is protected by an examination by the state hospital); Branscomb v. State , 299 Ark. 482, 774 S.W.2d 426 (1989) (holding that a psychiatric examination given by the state hospital satisfied the requirements in Ake ).
C. McWilliams
The Court recently interpreted Ake in *560 McWilliams , 582 U.S. at ----, 137 S.Ct. 1790. On January 13, 2017, the Court granted a petition for writ of certiorari in McWilliams v. Comm'r , 634 Fed.Appx. at 705-06, to answer the following question:
When this Court held in Ake that an indigent defendant is entitled to meaningful expert assistance for the "evaluation, preparation, and presentation of the defense," did it clearly establish that the expert should be independent of the prosecution?
The Court heard oral argument and subsequently issued its McWilliams opinion in June 2017. Because the Court granted McWilliams's petition for writ of certiorari on this issue, this court granted Ward's motion for stay of execution and took his motion as a case.
In McWilliams , Dr. John Goff, a neuropsychologist with Alabama's state hospital, examined McWilliams, who had been convicted of capital murder by an Alabama jury. Two days before the sentencing hearing, Dr. Goff filed his report. The report stated that McWilliams attempted to appear "emotionally disturbed and exaggerat[ed] his neuropsychological problems," McWilliams , 582 U.S. at ----, 137 S.Ct. at 1796, but also "that he had some genuine neuropsychological problems." Id. Dr. Goff stated in the report that McWilliams's issues were compatible with the head injuries that McWilliams had suffered as a child. The report stated that McWilliams's neurological deficit "could be related to his 'low frustration tolerance and impulsivity' " and "organic personality syndrome." Id. The day before the sentencing hearing, McWilliams's defense counsel received some updated records indicating McWilliams was taking an assortment of psychotropic medications. Id.
At the sentencing hearing, defense counsel moved for a continuance to review the information. The court denied the motion to continue the hearing but allowed defense counsel until mid-afternoon to review the material. Defense counsel then moved to withdraw from the case and again moved for a continuance. The court denied both motions and sentenced McWilliams to death. The court ruled that even if McWilliams's mental-health issues rose to the level of a mitigating circumstance, the aggravating circumstances would far outweigh this mitigating circumstance. Id. at ----, 137 S.Ct. at 1797.
McWilliams appealed to the Alabama Court of Criminal Appeals and argued that the circuit court had denied him the right to meaningful expert assistance as required by Ake . The Alabama Court of Criminal Appeals disagreed and held that the State had satisfied the Ake requirements by allowing Dr. Goff to examine McWilliams. McWilliams v. State , 640 So.2d 982 (Ala. Crim. App. 1991). The Alabama Supreme Court affirmed. Ex parte McWilliams , 640 So.2d 1015 (Ala. 1993). McWilliams subsequently sought federal habeas relief, and the federal district court denied the petition. McWilliams appealed to the Eleventh Circuit, which affirmed. McWilliams , 634 Fed.Appx. 698.
On appeal, the Court examined whether the Ake requirements had been met in McWilliams's case and stated:
[N]o one denies that the conditions that trigger application of Ake are present. McWilliams is and was an 'indigent defendant,' 470 U.S., at 70, 105 S.Ct. 1087. See supra , at 1794. His "mental condition" was "relevant to ... the punishment he might suffer," 470 U.S., at 80, 105 S.Ct. 1087. See supra , at 1794-1795. And, that "mental condition," i.e. , his "sanity at the time of the offense," was "seriously in question." 470 U.S., at 70, 105 S.Ct. 1087. See supra , at 1794-1795. Consequently, the Constitution, as interpreted in Ake , required the State to provide McWilliams with "access to a *561 competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. " 470 U.S. at 83, 105 S.Ct. 1087.
582 U.S. at ----, 137 S.Ct. at 1798 (emphasis added).
The Court stated that Alabama had complied with Ake 's requirement of providing McWilliams with access to a competent psychiatrist who had conducted a mental-health examination but that the psychiatrist had not assisted in McWilliams's defense. The Court stated,
Ake does not require just an examination. Rather, it requires the State to provide the defense with "access to a competent psychiatrist who will conduct an appropriate [1] examination and assist in [2] evaluation , [3] preparation , and [4] presentation of the defense."
McWilliams , 582 U.S. at ----, 137 S.Ct. at 1800 (emphasis added). The Court specifically stated that "Alabama met the examination portion of this requirement by providing for Dr. Goff's examination of McWilliams" but that Alabama failed to meet the three parts of assistance required by Ake . Id. at 1800.
The Court specifically elaborated on what is required of a psychiatrist's assistance to the defense:
But what about the other three parts? Neither Dr. Goff nor any other expert helped the defense evaluate Goff's report or McWilliams' extensive medical records and translate that data into a legal strategy. Neither Dr. Goff nor any other expert helped the defense prepare and present arguments that might, for example, have explained that McWilliams' purported malingering was not necessarily inconsistent with mental illness.... Neither Dr. Goff nor any other expert helped the defense prepare direct or cross-examination of any witnesses, or testified at the judicial sentencing hearing himself.
582 U.S. at ----, 137 S.Ct. at 1800-01 (emphasis added). The Court emphasized that "Alabama here did not meet even Ake 's most basic requirements," id. at 1800, and held that "[s]ince Alabama's provision of mental health assistance fell so dramatically short of what Ake requires, we must conclude that the Alabama court decision affirming McWilliams's conviction and sentence was 'contrary to, or involved an unreasonable application of, clearly established Federal law.' " Id. at ----, 137 S.Ct. at 1801.
Based on the Court's recent holding in McWilliams , I must conclude that Arkansas is in the same position as Alabama. Arkansas has incorrectly held for decades that a competency evaluation at the state hospital is sufficient under Ake . However, in McWilliams , the Court states that this view is a "plainly incorrect" reading of Ake and that more than a mental-health examination provided by the State satisfies Ake 's constitutional requirements. Id. at ----, 137 S.Ct. at 1799-1800. The Court states that a competent psychiatrist must also provide assistance in the forms of evaluation, preparation, and presentation to the defense. For the reasons set forth below, Ward lacked that mental-health expert assistance throughout his case.
II. Analysis of Ake and McWilliams in Ward's Case
A. Preliminary Showing of "Conditions That Trigger Ake "
Ward meets the threshold requirements that trigger Ake . The Court stated in McWilliams that a preliminary showing of "conditions that trigger Ake " includes that (1) the defendant is an "indigent defendant"; (2) his "mental condition" was "relevant to ... the punishment he might suffer"
*562 ; and (3) his "sanity at the time of the offense ... was seriously in question." McWilliams , 582 U.S. at ----, 137 S.Ct. at 1798.
First, the circuit court determined that Ward was indigent. The record reveals that the circuit court stated in its April 6, 1990 order that Ward had been previously adjudicated indigent and ordered the Pulaski County Treasurer to pay for penalty-phase witnesses to assist in his defense.
Second, Ward's mental condition was relevant to his possible punishment. Here, Ward was charged with capital murder, and the prosecution sought the death penalty. Pursuant to Arkansas Code Annotated section 5-4-605(1), (3) (1987), the jury could hear two mitigating factors relating to Ward's mental condition at the time of the offense. Those two mitigating factors included that the murder "was committed while the defendant was under extreme mental or emotional disturbance" and "was committed while the defendant was acting under unusual pressures or influences." See Ark. Code Ann. § 5-4-605(1), (3). Before trial, the circuit court denied Ward an Ake expert by denying his January 19, 1990 motion for appropriation of funds for expert assistance, and Ward was forced to rely on noncontemporaneous evidence of his mental condition from decades earlier. This evidence included testimony from a psychologist who examined him in 1977, school guidance counselors from the 1960s and 1970s, and a coworker in the 1970s from the Civil Air Patrol.
Third, Ward's sanity at the time of the offense was "seriously in question." The record is replete with questions that defense counsel raised concerning Ward's mental health. Defense counsel notified the court of Ward's mental-defect defense, requested competency evaluations, requested an Ake expert for sentencing, requested an ex parte hearing on his Ake motion, argued that an Ake expert was necessary for mitigation purposes, and requested a continuance based on counsel's inability to represent Ward because of Ward's mental-health issues.
B. Ake Mental-Health Factors
Having established that the threshold criteria have been met in Ward's case, the key issue is whether Ward's mental-health expert conducted "an appropriate [1] examination and assist[ed] in [2] evaluation , [3] preparation , and [4] presentation of the defense." McWilliams , 582 U.S. at ----, 137 S.Ct. at 1800.
1. Examination
In McWilliams , the Court stated that it "was willing to assume that Alabama met the examination portion of [the Ake requirements] by providing Dr. Goff's examination of McWilliams." 582 U.S. at ----, 137 S.Ct. at 1800 (emphasis added). Similarly, in Ward's case, the examination requirement was satisfied. The record reflects that the circuit court ordered Ward's commitment, and he stayed in the Arkansas State Hospital from November 29, 1989, to December 14 or 16, 1989. During that time, Drs. Michael Simon and O. Wendell Hall met with Ward and found him competent to proceed. On December 14, 1989, the physicians filed their report with the circuit court and found that Ward "did not lack the capacity to appreciate the criminality of his conduct."
In 1997, Ward's defense counsel moved to stay the proceedings and requested a mental-health examination after defense counsel reported Ward's bizarre behavior and his purported delusions. Counsel stated that Ward's mental condition "ha[d] deteriorated to the point that he cannot or will not cooperate with present counsel." After denying his Ake motion on February 27, 1997, the circuit court *563 ordered Ward to undergo an Act III evaluation, but the physicians terminated their interview with him because he refused to cooperate.
2. Assistance: Evaluation, Preparation, and Presentation
But as the McWilliams Court notes, Ake requires more than just a state mental-health examination. Ake also requires that Ward "receive[ ] the assistance of a mental health expert ... to effectively 'assist in evaluation, preparation, and presentation of the defense. ' " McWilliams , 582 U.S. at ----, 137 S.Ct. at 1799 (emphasis added). These "other three parts," id. at 1800, of a mental-health expert's assistance include (1) an evaluation of a report or medical records and a translation of that data into a legal strategy; (2) preparation that includes helping the defense "prepare and present arguments" relating to the defendant's mental health; and (3) presentation that includes helping "the defense prepare direct or cross-examination of any witnesses" and testifying for the defense. Id. at ----, 137 S.Ct. at 1800-01.
As in McWilliams , the three Ake assistance factors were not satisfied in Ward's case. First, the record is devoid of any evidence that either Simon or Hall helped Ward's defense counsel evaluate their mental-health report, which consisted of "findings ... [from] (1) [h]istorical data from outside sources; (2) [m]edical history, physical and neurological examinations; (3) [l]aboratory and other physical studies; [and] (4) [p]sychological assessment by staff psychologist [sic]." Ward v. State , 2015 Ark. 60, at 2, 455 S.W.3d 303, 305 (Ward V) . Nor is there any evidence to suggest that either Simon or Hall helped translate this data into a legal strategy for the defense. Second, Ward's defense counsel lacked a mental-health expert to assist the defense in preparing and presenting its specific arguments concerning Ward's fluctuating mental-health status. Third, Ward did not have the assistance of a mental-health expert to prepare direct examination or to testify for the defense. In fact, Simon testified for the State.
Thus, I would hold that, like the Alabama courts in McWilliams , this court did not meet Ake 's most basic requirements in Ward's case. Like the Alabama courts, this court has repeatedly held that the Ake requirements are met when the State provides a competent psychiatrist who examines the defendant. But McWilliams simply requires more.
III. Law-of-the-Case Doctrine and Ward VI
A. Law-of-the-Case Doctrine
The majority relies on the law-of-the-case doctrine and agrees with the State's argument that Ward now presents in his motion to recall the mandate the issues that he presented in Ward VI. The majority states that "pursuant to the law-of-the-case doctrine, we hold that Ward's arguments provide no basis for granting Ward's motion to recall the mandate in his resentencing." I disagree.
The Supreme Court has held that when a decision would undoubtedly work a "manifest injustice," the law of the case doctrine does not apply. Agostini v. Felton , 521 U.S. 203, 236, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) ; see also Arizona v. California , 460 U.S. 605, 618, n.8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). Further, when an intervening decision has clarified the controlling rules of law, or when the rule stated in the prior decision was a " 'manifest misapplication' of the law resulting in 'substantial injustice,' " the law-of-the-case doctrine does not apply. People v. Jurado , 38 Cal.4th 72, 41 Cal.Rptr.3d 319, 131 P.3d 400, 414 (2006).
*564 The application of the law-of-the-case doctrine in Ward's case is misplaced because the Court held in McWilliams that the constitutional right to access to a competent mental-health expert requires more than simply an examination of the defendant at the state hospital by the State. The Court's holding in McWilliams must be followed by this court. To hold otherwise would be a "manifest injustice" contemplated by the Court in Agostini , 521 U.S. 203, 117 S.Ct. 1997, 138 L.Ed.2d 391. Simply put, this court should not continue to rely on the law-of-the-case doctrine when its longstanding precedent is clearly wrong.
B. Ward VI
I disagree with the majority's contention that, in Ward VI , Ward failed to make a threshold showing that his sanity at the time of the offense was likely to be a significant factor at trial. In Ward VI , the court held that "the defendant does not have a constitutional right to search for a psychiatrist of his personal liking or to receive funds to hire his own but is entitled to access to a competent psychiatrist and the examination afforded to Ward satisfied that right." 2015 Ark. 61, at 14, 455 S.W.3d at 827. In Ward VI , this court simply relied on its previous interpretations of Ake and did not fully analyze the "preliminary showing" of competency iterated in Ake and McWilliams . In short, this court incorrectly decided Ward VI by relying on erroneous precedent.
Moreover, in Ward VI , this court overlooked an important tenet in Ake :
When the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent. It is in such cases that a defense may be devastated by the absence of a psychiatric examination and testimony; with such assistance, the defendant might have a reasonable chance of success.
Ake , 470 U.S. at 82-83, 105 S.Ct. at 1096 (emphasis added). A majority of state courts hold that an ex parte hearing is required. 3 Criminal Procedure § 11.2(e) (4th ed.). In Arkansas, this court has recognized "the appropriate rule" of allowing a defendant to make an ex parte showing to the circuit court when the defendant's sanity is likely to be a significant factor in his or her defense. Wall v. State , 289 Ark. 570, 572, 715 S.W.2d 208, 209 (1986).
In this instance, the circuit court denied Ward an opportunity to present additional evidence of his mental condition when it denied his request for an ex parte hearing before his third sentencing hearing. On February 14, 1997, Ward moved the circuit court for an order authorizing certain defense expenditures to hire an expert to assist him in presenting mitigating factors. Ward stated that he made the request "because defense counsel does not wish to unnecessarily disclose the defense mitigation case" to the State. He further stated, "Only a skilled professional with appropriate supporting experts and information can determine the existence of any mental disease or defect which may mitigate in this case." He also requested an ex parte hearing to make a requisite showing for an Ake expert. The circuit court denied Ward's motion for an ex parte hearing in its February 27, 1997 order, and Ward's case proceeded to his third resentencing trial in the Pulaski County Circuit Court. Thus, in my view, the circuit court's denial of Ward's motion for an ex parte hearing runs afoul of Ake , and Ward should not be penalized for failing to establish a showing for an Ake expert.
*565 IV. Ward's Motion to Recall the Mandate
This court will recall a mandate and reopen a case only in extraordinary circumstances. Wertz v. State , 2016 Ark. 249, 493 S.W.3d 772. To ensure that our discretionary act is not exercised arbitrarily, this court recognizes three relevant factors to consider when it has been presented with a motion to recall the mandate in a death-penalty case: (1) the presence of a defect or breakdown in the appellate process; (2) a dismissal of proceedings in federal court because of unexhausted state-court claims; and (3) the appeal is a death case requiring heightened scrutiny. See id. ; see also Roberts v. State , 2013 Ark. 57, 426 S.W.3d 372. While we do consider these factors, strict satisfaction of all three factors is not required because this court has the inherent authority to recall its mandate in extraordinary circumstances. See Nooner v. State , 2014 Ark. 296, 438 S.W.3d 233.
Two of relevant mandate factors are satisfied in this case. First, a "presence of a defect or breakdown in the appellate process" exists because Ward did not get the requisite meaningful assistance of a competent psychiatrist to the defense as contemplated by McWilliams in its interpretation of Ake . Second, Ward's case is a "death case requiring heightened scrutiny." Ward filed motions for appropriation of funds for mental-health expert assistance in January 1990, August 1992, and February 1997. The circuit court denied each of those motions. In my view, this court's heightened scrutiny of a death case warrants granting Ward's motion because the Court's holding in McWilliams further clarified the holding in Ake . Because this court repeatedly applied a flawed interpretation of Ake to Ward's case on direct appeal from his 1997 resentencing, this court should recall the mandate from his resentencing in Ward III , 338 Ark. 619, 1 S.W.3d 1.
V. Conclusion
For the foregoing reasons, I would grant Ward's motion to recall the mandate in his 1997 resentencing. See Ward III , 338 Ark. 619, 1 S.W.3d 1. Accordingly, I would not lift the stay of execution.
Hart, J., joins this opinion.

See Rule 12.9 Washington Rules of Appellate Procedure (providing for recall of the mandate limited to instances of inadvertent mistake of fraud and filed within a reasonable time); State v. Wade , 133 Wash.App. 855, 138 P.3d 168 ( 2006) (explaining appellate court may only recall the mandate to correct an inadvertent mistake as improperly recalling it to reconsider the merits impacts the stability of the courts); State v. Taylor , 1 S.W.3d 610, 611 (Mo. Ct. App. 1999) (recalling the mandate "is limited to consideration of the claim that federal constitutional rights have been infringed when the lawyer acting for the accused on appeal has been ineffective by constitutional standards"); Chapman v. St. Stephens Protestant Episcopal Church , 105 Fla. 683, 138 So. 630 ( 1932) (explaining the mandate may not be recalled once the term during which it was issued has ended) (citing Lovett v. State , 29 Fla. 384, 11 So. 176 (1892) ); In Re Amendments to Florida Rules of Judicial Admin. & Florida Rules of Appellate Proc.; White v. State , 190 Miss. 589, 195 So. 479 (1940) (holding court can recall the mandate when inadvertently issued); Horton v. State , 63 Neb. 34, 88 N.W. 146 (1901) (explaining ability to recall the mandate ends when the term it was issued in ends); Lindus v. Northern Ins. Co. of New York , 103 Ariz. 160, 438 P.2d 311 (1968) (allowing recall in situations of fraud or mistake of fact); Rule 41 of the Rules of the District of Columbia Court of Appeals (providing a motion to recall the mandate must be filed within 180 days); Thompson v. Nickle , 113 Okla. 44, 239 P. 649 (1925) (recalling the mandate only when issued through inadvertence or mistake); Jackson v. State , 286 Ga. 407, 688 S.E.2d 351(2010) (permitting recall for mistake or fraud); Coulter v. Schofield , 32 Haw. 426 (1932) (recall only before term ends); and Kentucky Criminal Rules 60.02 (recall for fraud in final judgment).